**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRACY WOOTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:07-cv-701-WKM** |
| | ) | |
| **PAGE WALLEY, Commissioner** | ) | |
| **of the Alabama Department of** | ) | |
| **Human Resources, in his official** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW defendant Dr. Page Walley, Commissioner of the Alabama Department of Human Resources, in his official and individual capacities and moves this Honorable Court for a Summary Judgment in favor of Dr. Page Walley in his official and individual capacities. In support of his motion Defendant contemporaneously submits his supporting brief and evidentiary materials.

RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL

SHARON E. FICQUETTE
ASSISTANT ATTORNEY GENERAL
STATE OF ALABAMA

s/ Jennifer M. Bush
JENNIFER M. BUSH (BUS016)
Assistant Attorney General
State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Phone:  (334) 242-9330
Fax:  (334) 242-0689
Jennifer. Bush@dhr.alabama.gov
ATTORNEYS FOR PAGE WALLEY

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 12, 2008, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following:

Keith Anderson Nelms
847 South McDonough Street
Montgomery, AL 36104

<div style="margin-left: 40%;">

s/ Jennifer M. Bush
JENNIFER M. BUSH (BUS016)
Assistant Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Phone:  (334) 242-9330
Fax:  (334) 242-0689

ATTORNEY FOR PAGE WALLEY

</div>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRACY WOOTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:07-CV-701-WKM** |
| | ) | |
| **PAGE WALLEY, Commissioner** | ) | |
| **of the Alabama Department of** | ) | |
| **Human Resources, in his official** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Dr. Page Walley, Commissioner of the Alabama Department of Human Resources, in his official and individual capacities, by and through his undersigned counsel, and, in support of his Motion for Summary Judgment, filed contemporaneously herewith, submits to this Court the following:

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................2

PLAINTIFF'S CLAIMS ...............................................................................................7

RULE 56(C) STANDARD ............................................................................................9

FACTS OF THE CASE ...............................................................................................11

ARGUMENT ..............................................................................................................14

   A.  LEGAL BASIS FOR TAX OFFSET .................................................................. 14

   B.  DEFENDANT PROVIDES CONSTITUTIONAL
       NOTICES OF TAX OFFSET ............................................................. 16

   C.  DEFENDANT PROVIDES CONSTITUTIONAL
       PROCEDURES TO CONTEST TAX OFFSET ...................................... 23

   D.  PLAINTIFF FAILED TO TAKE ADVANTAGE
       OF COMPLAINT PROCEDURES ...................................................... 32

   E.  TITLE IV-D OF THE SOCIAL SECURITY ACT
       DOES NOT CREATE A FEDERALLY ENFORCED RIGHT ........................... 37

   F.  THE STATUTE OF LIMITATIONS BARS ANY CLAIMS
       FOR THE 2005 TAX OFFSET ............................................................ 44

   G.  THE FIFTH AMENDMENT DOES NOT APPLY
       TO STATE GOVERNMENT ............................................................... 45

CONCLUSION ...........................................................................................................48

## TABLE OF AUTHORITIES

### Cases

*31 Foster Children*
   329 F.3d at 1268. ........................................................................................ 38

*Arrington v. Helms*
   438 F.3d 1336 (C.A.11 2006) ................................................................ 39, 40

*Atkins v. Parker*
472 U.S. 115 105 S.Ct. 2520
86 L.Ed.2d 81 (1985) .............................................................................. 19, 33

*Bank of Jackson County v. Cherry*
980 F.2d 1354
(11th Cir. 1992) ........................................................................................ 27, 28

*Bass v. Perrin*
170 F.3d 1312
(11th Cir. (11th Cir. 1999) ...................................................................... 28

*Bell v. City of Demopolis, Ala.*
86 F.3d 191
(11th Cir. 1996) ........................................................................................ 29

*Blessing v. Freestone*
520 U.S. 329, 117 S.Ct. 1353
137 L.Ed.2d 569 (1997) .......................................................................... 36

*City of West Covina v. Perkins*
525 U.S. 234, 119 S.Ct. 628
142 L.Ed.2d 636 (1999). ......................................................................... 18

*Cleveland Board of Education v. Loudermill*
470 U.S. 532, 105 S.Ct. 1487,
84 L.Ed.2d 494 (1985). ........................................................................... 20

*Cotton v. Jackson*
216 F.3d 1328
(11th Cir. 2000) ........................................................................................ 29

*Cuvillier v. Taylor*
503 F.3d 397
(C.A.5 2007). ............................................................................................ 40, 42

*Dusenbery v. United States*
534 U.S. 161
(2002) ......................................................................................................... 13

*Goldberg v. Kelly*
397 U.S. 254, 90 S.Ct. 1011
25 L.Ed.2d 287 (1970) ............................................................................ 20

*Gonzaga University v. Doe*
536 U.S. 273, 122 S.Ct. 2268
153 L.Ed.2d 309 (2002),......................................................................... 36, 37

*Grayden v. Rhodes*
345 F. 3d 1225
(11th Cir. 2003)........................................................................................ 13, 14

*Harris v. Board of Education of the City of Atlanta*
105 F.3d 591
(11th Cir. 1997)........................................................................................ 28

*Hooper v. City of Montgomery*
482 F.Supp.2d 1330
(M.D.Ala.2007)......................................................................................... 43

*Horton v. Board of County Commissioners and Flagler County*
202 F.3d 1297
(11th Cir. 2000)........................................................................................ 28

*Hudson v. Palmer*
468 U.S. 517, 104 S.Ct. 3194
82 L.Ed.2d 393 (1984) ........................................................................... 19

*LaChance v. Erickson*
522 U.S. 262, 118 S.Ct. 753
139 L.Ed.2d 695 (1998) .......................................................................... 20

*Maine v. Thiboutot*
448 U.S. 1, 100 S.Ct. 2502
65 L.Ed.2d 555 (1980). ........................................................................... 35

*Mathews v. Eldridge*
424 U.S. 319, 335, 96 S.Ct. 893,
47 L.Ed.2d 18 (1976) ............................................................................. 20

*Maynard v. Williams*
72 F.3d 848
(11th Cir. 1996).......................................................................................... 35

*McKinney v. Pate*
20 F.3d 1550
(11th Cir. 1994) (*en banc*) ..................................................................... 28

*Morrissey v. Brewer*
   408 U.S. 471, 92 S.Ct. 2593,
   33 L.Ed.2d 484 (1972) ................................................................................ 14

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306, 70 S.Ct. 652,
   94 L.Ed. 865 (1950) ............................................................................ 13, 15

*Narey v. Dean*
   32 F.3d 1521
   (11th Cir. 1994) ........................................................................................... 29

*Parsons v. State*
   251 Ala. 467, So.2d 209
   (ALA. 1948) .................................................................................................. 33

*Piotrowski v. City of Houston*
   51 F.3d 512, n. 5
   (5th Cir.1995) .............................................................................................. 41

*Reetz v. People of State of Michigan*
   188 U.S. 505, 23 S.Ct. 390,
   47 L.Ed. 563 (1903) .................................................................................... 18

*Rucker v. Secretary of Treasury of U.S.*
   634 F.Supp. 598
   (D.Colo.1986) .......................................................................... 24, 25, 26, 27

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*
   483 U.S. 522, 107 S.Ct. 2971
   (U.S.Cal.1987) ............................................................................................ 43

*Schwier v. Cox*
   340 F.3d 1284
   (11th Cir. 2003) ........................................................................................... 37

*State v. Friedkin*
   244 Ala. 494, 14 So.2d 363
   (ALA. 1943) .................................................................................................. 33

*Strickland v. City of Dothan*, AL
   399 F.Supp.2d 1275
   (M.D.Ala.2005) ........................................................................................... 43

*Suter v. Artist M.*
  503 U.S. 347, 112 S.Ct. 1360
  118 L.Ed.2d 1 (1992) .............................................................................. 35, 36

*Walters v. Weiss*
  392 F.3d 306
  (8th Cir. 2004) ............................................................................................... 38

*Wehunt v. Ledbetter*
  875 F.2d 1558
  (11th Cir. 1989) ............................................................................................. 35

*Wilder v. Virginia Hospital Ass'n.*
  496 U.S. 498, 110 S.Ct. 2510,
  110 L.Ed.2d 455 (1990) ............................................................................... 35

*Zinermon*
  494 U.S. at 127
  110 S.Ct. at 984 ............................................................................................. 20

*Zipperer v. City of Fort Myers*
  41 F.3d 619
  (11th Cir. 1995) ....................................................................................... 27, 28

## **Statutes**

42 U.S.C. § 1983 ................................................................................................ 42

42 U.S.C §§ 651 through 669b .................................................................... 11, 34

42 U.S.C. § 651 .................................................................................................. 34

42 U.S.C. § 652 ............................................................................................ 12, 35

42 U.S.C. § 652(a)(1) ........................................................................................ 34

42 U.S.C. § 657 ............................................................................................ 38, 39

42 U.S.C. § 664 ..................................................................................... 13, 18, 24

42 U.S.C. § 666 (a)(3) .................................................................................. 11, 35

Ala. Code 1975 § 40-18-100 et seq ................................................................. 17

Ala. Code 1975 § 40-18-100 through 110 ....................................................... 12

Ala. Code 1975 § 40-18-103(c) ................................................................. 17

Ala. Code 1975 § 40-18-104 ................................................................... 22

Ala. Code 1975 § 6-2-38 (l) .................................................................. 41

Ala. Code 1975, § 38-10-3(a) ................................................................. 11

Ala.Code §§ 36-12-40 and 41-13-1 ............................................................ 33

## **Other Authorities**

45 C.F.R. 300 et seq. ......................................................................... 18

1984 U.S.C.C.A.N.
  98th Cong. 2d Sess.
  98 STAT 1316 .............................................................................. 39

Alabama Administrative Code at r. 660-3-6 .................................................... 18

Alabama Administrative Code at r. 660-3-6-.03 ............................................... 12

Alabama Administrative Code at r. 660-3-6-.03(2) ........................................ 17, 30

Alabama Administrative Code at r. 660-3-6-.08 ............................................... 21

Alabama Administrative Code at r. Chapter 660-1-5 and 660-3-15 ......................... 21, 23

Code of Federal Regulations at 45 C.F.R. § 303.6 ........................................... 12

Child Support Enforcement Amendments of 1984 P.L. 98-378 .................................. 39

## **PLAINTIFF'S CLAIMS**

Plaintiff alleges that her joint federal and state income tax returns were intercepted by Alabama Department of Human Resource (DHR) for the purposes of satisfying a child support arrearage owed by her husband, Rodney Wooten. Plaintiff alleges that she did not receive prior written notice from DHR, the State of Alabama

Department of Revenue or the Internal Revenue Service (IRS) that her taxes were to be intercepted. Plaintiff alleges that she contacted DHR several times in an attempt to obtain her income tax refund or to be given an administrative hearing to protest these intercepts. Plaintiff alleges that she was told by DHR that she would have to contact both the State of Alabama Department of Revenue and the IRS in order to protest these intercepts. Plaintiff alleges that she was told by both the State of Alabama Department of Revenue and the IRS that she would have to contact DHR to protest these intercepts. Plaintiff alleges that she has exhausted any and all avenues to obtain her income tax refunds including contacting DHR, the State of Alabama Department of Revenue and the IRS. Plaintiff further alleges that there is no provision in place for her to obtain an administrative hearing regarding the intercept of her income tax refunds.

Plaintiff claims that Defendant Walley failed and/or refused to implement policies and procedures to prevent violations of her rights. Plaintiff alleges that as a result she has been denied her right to due process of law. The Plaintiff's claim can be broken down into two components: (1) the failure to provide notice of the tax offset; and (2) the failure to implement policies and procedures to provide for a contest to tax offset.

## COUNT I

Plaintiff alleges that DHR has failed and refused, and continues to fail and refuse, to pay Plaintiff just compensation for the taking of her income tax refund. Plaintiff alleges that the intercept of her taxes constitutes a taking of property and is contrary to the Fifth Amendment to the United States Constitution.

## COUNT II

8

Plaintiff alleges that DHR has failed and refused, and continues to fail and refuse, her request to provide her with an administrative hearing through which she can challenge DHR's deprivation of her property. Plaintiff alleges that the intercept of her taxes constitutes a denial of her procedural and substantive due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983.

## RELIEF REQUESTED

Plaintiff requests from Walley in his official capacity present and prospective injunctive relief, a declaratory judgment that her rights have been violated, and modification or elimination of unconstitutional practices. Plaintiff requests from Walley in his individual capacity compensatory and punitive damages. Plaintiff also requests the cost of the action and reasonable attorney fees.

## **RULE 56(c) STANDARD**

Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The parting seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting FED.R.CIV.P. 56(c)). The movant can meet this burden by presenting evidence in support

of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-323. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323 (emphasis in the original).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and his or her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED.R.CIV.P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the Court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a

10

verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252; *see also Bill Johnson's Restaurants, Inc., v. N.L.R.B.*, 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Inds. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the Court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## **FACTS OF THE CASE**

The following facts are taken from the affidavits of Ke'Asha Howard (Exhibit 1), Janice Grubbs (Exhibit 2), Clifford Smith (Exhibit 3), and Louise Shaddix (Exhibit 4).

11

"The Tax Intercept Program (also called the Tax Offset Program) is the process of intercepting a noncustodial parent's federal and state income tax refunds for the purpose of satisfying child support arrearages.   Tax offset is governed by federal and state statutes, rules and regulations which in turn govern the Department of Human Resources' policy and procedures.   Federal law mandates that the offset of taxes be automated through DHR's child support case management computer system known as Alabama Location Enforcement Collection System (ALECS).   All cases that meet the criteria for submittal for tax refund offset are submitted by ALECS to the Alabama Department of Revenue for state tax offset and/or to the Federal Office of Child Support Enforcement for referral to the Federal Department of Treasury's Financial Management Service (FMS) for federal tax offset."  (See Affidavit of Janice Grubbs, Exhibit 1, Page 2.)

"In January 2006, Mr. Wooten's case met the criteria for tax offset.  DHR's child support case management computer system known as Alabama Location Enforcement Collection System (ALECS) generated a pre-tax offset notice to Rodney Wooten on January 3, 2006, notifying him that when he filed his taxes any refund up to the amount of child support arrears that he owed would be offset.  The notice also outlined any steps his spouse could take to contest the tax offset.  On July 31, 2006, DHR received the state joint tax refund for tax year 2005 in the amount of $1,109.  (A copy of Rodney Wooten's pay history is attached and labeled as Attachment "A".)    I did not receive any communication from either Rodney Wooten or his current wife, Tracy Wooten, contesting the tax offset until January 2007."  (See Affidavit of Ke'Asha Howard, Exhibit 1, Page 2.)

"On January 2, 2007, I received a December 13, 2006, letter from Tracy Wooten requesting that her portion of the jointly file 2005 Alabama taxes that were intercepted be refunded back to her.  (A copy of Tracy Wooten's letter is attached and labeled as Attachment "B".)  On January 4, 2007, I sent a letter was sent to Rodney Wooten instructing him of steps his spouse might take for the return of the tax refund.  (A copy of the letter to Rodney Wooten is attached and labeled as Attachment "C".)  Almost six months had passed since the tax refund had been received and the thirty days in which Tracy Wooten had to contest the state tax offset had expired.  Rodney Wooten's pay history shows that the offset of the 2005 joint tax refund is the only tax offset received by DHR that was not refunded.  (Attachment "A".)  (See Affidavit of Ke'Asha Howard, Exhibit 1, Page 2.)

On February 5, 2007, the Circuit Court of Montgomery County in Case Number DR 94-697 determined that there were no child support arrears owed by Rodney Wooten but that current child support of $541 per month was due.  (A copy of the February 5, 2007, court order is attached and labeled as Attachment "D".)  On February 20, 2007, tax intercept was deleted on ALECS.  On February 23, 2007, the Department of Revenue offset the state tax refund in the amount $390.10.  (A copy of the post-offset notice sent to Tracy Wooten is attached and labeled as Attachment "E".)  ALECS did not release the money to the custodial parent.  On March 29, 2007, Tracy Wooten sent a letter to the Montgomery County DHR requesting her portion of the joint tax refund from the 2006 Alabama taxes that was offset.  (A copy of Tracy Wooten's letter is attached and labeled as Attachment "F".)  On April 10, 2007, the entire $390 offset from the 2006 State tax

refund was returned to the Wootens. (See Affidavit of Ke'Asha Howard, Exhibit 1, Page 3.)

Per the affidavit of Clifford Smith, "I served as the administrative hearing officer from October 2001 through December 2005.  I have checked my hearing log and never handled an administrative hearing request on behalf of Tracy Wooten."  (See Affidavit of Clifford Smith, Exhibit 3, Page 2.)

Per the affidavit of Louise Shaddix, "I served as the administrative hearing officer from July, 2004 through present.  I have checked my hearing log and never received or handled an administrative hearing request on behalf of Tracy Wooten."  (See Affidavit of Louise Shaddix, Exhibit 4.)

## ARGUMENT

### A.    LEGAL BASIS FOR TAX OFFSET

STATE TAX OFFSET

Title IV-D of the Social Security Act as codified at 42 U.S.C 651 through 669b is a set of *funding* statutes which authorizes the federal government to provide *funding* to Alabama to operate a child support program under its own state statutes so long as Alabama meets the criteria set out in Title IV-D of the Social Security Act.  In response to the funding provision of Title IV-D of the Social Security Act and in order to receive funds pursuant to that Act, the Alabama Legislature enacted *Ala. Code 1975*, § 38-10-3(a) which designates the Department of Human Resources as the provider of IV-D child support services.  *Ala. Code 1975*, § 38-10-3(a) provides:

> The Department of Human Resources of the State of Alabama shall operate child support programs as may be required under the provisions of Title IV-D, including, but not limited to, locating absent parents, establishing paternity, establishing or modifying support orders,

enforcing support obligations and related matters, as described or defined by the Social Security Act and amendments thereto.

Federal statute 42 U.S.C. sets out the State Plan for Child Support Enforcement that States must follow to receive federal funds. Offset of state tax refunds by the Alabama Department of Revenue for the collection of child support arrears on behalf of DHR is mandated under federal law at 42 U.S.C. 666 (a)(3) which provides in part:

> (a)  In order to satisfy section 654(20)(A) of this title, each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under this part:
>
> . . .
>
> (3) Procedures under which the State child support enforcement agency shall request, and the State shall provide, that for the purpose of enforcing a support order under any State plan approved under this part--
>
> (A) any refund of State income tax which would otherwise be payable to a noncustodial parent will be reduced, after notice has been sent to that noncustodial parent of the proposed reduction and the procedures to be followed to contest it (and after full compliance with all procedural due process requirements of the State), by the amount of any overdue support owed by such noncustodial parent;

To fulfill the federal mandates, the Alabama Legislature enacted Ala. Code 1975 § 40-18-100 through 110 which authorizes the Alabama Department of Revenue to offset state tax refunds, sets out the procedure by which state tax refunds are offset, how tax payers are notified of the pending offset and procedures for contesting tax offset. The Alabama Administrative Code at r. 660-3-6-.03 also provides that the State Department of Revenue may freeze any refund of at least $25 that has been certified by the Child Support Enforcement Division as a debt owed and send that refund to the DHR.

FEDERAL TAX OFFSET

Federal tax offset is mandated by 42 U.S.C.A. § 652 which provides, in part as

follows:

> The Secretary shall, upon the request of any State having in effect
> a State plan approved under this part, certify to the Secretary of the
> Treasury for collection pursuant to the provisions of section 6305 of the
> Internal Revenue Code of 1986 the amount of any child support obligation
> (including any support obligation with respect to the parent who is living
> with the child and receiving assistance under the State program funded
> under part A of this subchapter) which is assigned to such State or is
> undertaken to be collected by such State pursuant to section 654(4) of this
> title.

The Code of Federal Regulations at 45 C.F.R. § 303.6 provides in part that each

IV-D Child Support Enforcement agency must maintain and use an effective system for

enforcing child support obligations by submitting once a year all cases which meet the

certification requirements for federal and state income tax refund offset.  The procedure

to be followed for federal tax offset is outlined in 42 U.S.C.A. § 664.

## B.  DEFENDANT PROVIDES CONSTITUTIONAL NOTICES OF TAX OFFSET

The United States Supreme Court in *Dusenbery v. United State*s.  534 U.S. 161,

167-168 (2002) held that *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306,

70 S.Ct. 652 (U.S. 1950) supplies the appropriate analytical framework for evaluating

notice claims:

> [T]he *Mathews* balancing test was first conceived in the context of
> a due process challenge to the adequacy of administrative procedures used
> to terminate Social Security disability benefits.  Although we have since
> invoked *Mathews* to evaluate due process claims in other contexts, we
> have never viewed *Mathews* as announcing an all-embracing test for
> deciding due process claims.  Since *Mullane* was decided, we have
> regularly turned to it when confronted with questions regarding the
> adequacy of the method used to give notice. *Dusenbery v. United States*,
> 534 U.S. at 167.

The Eleventh Circuit has also held that *Mullane* is the appropriate statutory notice standard.  *Grayden v. Rhodes*, 345 F.3d 1225, 1242 (11th Cir. 2003) ("We apply the *Mullane* standard to evaluate the adequacy of statutory notice in this case.").

Where it is required by procedural due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).  The level of notice required before an individual is deprived of a constitutionally protected property interest depends upon the particular benefits at issue.  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

There are all kinds of notices which satisfy due process.  Some are personal and individual while others are more general:

> Notice comes in many shapes and sizes, and the events surrounding this case illustrate the various types of notes that can be employed.  Notice may be personal, including a conversation (either in-person or by telephone), a letter delivered by mail, or by posting or delivery at one's place of abode, notice may also be more general; it can be published in a newspaper, posted on the property, or provided in a state statute or city code.

*Grayden v. Rhodes*, 345 F. 3d 1225, 1239 (11th Cir. 2003).

When DHR offsets joint federal and/or state income tax refunds, non-custodial parents and their spouses receive two notices that their tax refund is to be offset.  The first notice is sent by DHR prior to the tax offset.  The second is sent by the taxing authority after the tax offset occurs.  Janice Grubbs, policy analyst for DHR, describes the notices in her affidavit.

17

There are two notices that are sent to the non-custodial parent and their spouse when tax refunds are offset. The first notice is a pre-offset notice that is generated by ALECS and sent by the State Child Support Enforcement Division to the qualifying non-custodial parent prior to offsetting the tax refund. This pre-offset notice is designed to provide the non-custodial parent and their spouse with information about tax offset and how to avoid and/or contest the tax offset. The pre-offset notice informs the non-custodial parent of the past due amount, that they have the right to contest DHR's determination of the amount of past due child support or that past-due support is owed, and that they have the right to an administrative review by contacting DHR within 30 days. (A copy of the pre-offset notice is attached and labeled as Attachment "B".) That notice contains the telephone number and address of the county DHR office responsible for conducting the review.

. . .

Once DHR certifies a non-custodial parent's name for the Tax Offset Program, the Alabama Department of Revenue or the Federal Department of Treasury's Financial Management Service will freeze the non-custodial parent's tax refund and send the intercepted money to DHR. Concurrent with the tax refund offset, the second notice of the tax offset is sent by either the Alabama Department of Revenue, in the case of a state refund, or the Federal Department of Treasury's Financial Management Service if the refund is a result of a federal income tax return.

Per *Ala. Code 1975*, §40-18-103(c) the post-offset notice sent by the Alabama Department of Revenue is to contain an explanation of the type of debt, the amount of the debt, notice that the refund, up to the debt amount, has been sent to DHR and notice regarding the taxpayer's right to appeal the intercept within thirty days from the date of the post-offset notice. This notice contains the address and telephone number of State Child Support Enforcement personnel trained specifically to handle tax offset. (A copy of the state post-offset notice sent by the Alabama Department of Revenue is attached and labeled as Attachment "C".)

(Affidavit of Janice Grubbs, Exhibit 2, Pages 2-4, Attachments B and C.)

The pre-offset notice provided by DHR and the post-tax offset notice provided by

the taxing authority are "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present

their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70

S.Ct. 652, 657, 94 L.Ed. 865 (1950).

Both pre and post-offset notices provide information to spouse of the non-custodial parent informing them how to contest the tax offset.  Prior to the filing of the tax return neither DHR, the Department of Revenue nor the IRS know whether or not the non-custodial parent will file a return individually or jointly with a spouse.  (See Affidavit of Janice Grubbs, Exhibit 2, Page 3.)  Because of this, DHR includes information for the spouse of a non-custodial parent about how to contest the tax refund offset in the event of a jointly filed tax return in every pre-offset notice.  (See Affidavit of Janice Grubbs, Exhibit 2, Page 3.)  Per the affidavit of Janice Grubbs the pre-offset notice provides as follows:

> If you are married, filing a joint income tax return and your spouse had no legal responsibility for the support debt that you incurred separately, your current spouse may be entitled to receive his or her portion of the joint refund.  For this provision to apply, your spouse must have a taxable income included in the return, income taxes withheld and/or made estimated tax payments.
> If your spouse meets the criteria above, he or she should take the following actions to receive his or her portion of the joint refund:
> 1.      Federal (IRS) Joint Refund – File a Form 8379, Injured Spouse Claim and Allocation.  Form 8379 should be attached to the top of the Form 1040 or 1040A when you file your tax return with the IRS, or be filed according to the other instructions as indicated on the Form 8379.
> 2.      State Joint Refund – (a) File separate returns, or (b) after the refund has been collected, your spouse should contact the county or state office identified above.

(Affidavit of Janice Grubbs, Exhibit 2, Attachment B.)

The taxing authority, be it the Alabama Department of Revenue or the IRS, sends the post-tax offset notice.  In regard to state tax offset the notice sent by the Alabama Department of Revenue includes the name of any jointly filing spouse and explains how that spouse may request their portion of the tax offset.  Ala. Code 1975 § 40-18-103(c) reads in part as follows:

>At the time of the transfer of funds to a claimant agency pursuant to subsection (b) of this section, the department shall notify the taxpayer or taxpayers whose refund is sought to be set off that the transfer has been made. Such notice shall clearly set forth the name of the debtor, the manner in which the debt arose, the amount of the claimed debt, the transfer of funds to the claimant agency pursuant to subsection (b) of this section and the intention to set off the refund against the debt, the amount of the refund in excess of the claimed debt, the taxpayer's opportunity to give written notice to contest the setoff within 30 days of the date of mailing of the notice, the name and mailing address of the claimant agency to which the application for a hearing must be sent, and the fact that the failure to apply for such a hearing, in writing, within the 30-day period will be deemed a waiver of the opportunity to contest the setoff. In the case of a joint return or a joint refund, the notice shall also state the name of the taxpayer named in the return, if any, against whom no debt is claimed, the fact that a debt is not claimed against such taxpayer, the fact that such taxpayer is entitled to receive a refund if it is due him regardless of the debt asserted against his spouse, and that in order to obtain a refund due him such taxpayer must apply, in writing, for a hearing with the claimant agency named in the notice within 30 days of the date of the mailing of the notice. If a taxpayer fails to apply in writing for such a hearing within 30 days of the mailing of such notice, he will have waived his opportunity to contest the setoff.

Alabama Administrative Code at r. 660-3-6-.03(2) specifically addresses joint tax returns

and provides

>If a joint return has been filed and a joint refund is to be made, the notice must give the name of the taxpayer who has no debt claimed against him. The notice will state that such taxpayer is entitled to a refund if it is due regardless of the debt claimed against the spouse. The taxpayer must apply in writing for a hearing within thirty (30) days of the mailing of the notice.

Janice Grubbs, policy analyst for DHR, describes the information sent to spouses

in the post-tax offset notice in her affidavit.

>If the non-custodial parent and current spouse filed a state joint tax return, *Ala. Code 1975*, §40-18-103(c) requires that the spouse's name also appear on the post-offset notice. The post-offset notice informs the spouse of a non-custodial parent how to contest the state tax refund offset in the event of a jointly filed tax return. The post-offset notice (Attachment "C") provides:

If you are married, filing a joint return and incurred this debt separately from your spouse who has no legal obligation to pay the debt, but was employed and received income and paid withholding and/or estimated tax payments, your spouse may be entitled to his/her share of the joint refund. Your spouse may receive his/her share of the joint refund by submitting to the agency above within thirty days from the date of this letter a clear legible copy of your Alabama Individual Income Tax Return Form 40 or 40A, all W-2 Forms and all other supporting documents that were required to be submitted to the Alabama Department of Revenue when your tax return was filed.

(Affidavit of Janice Grubbs, Exhibit 2, Page 4 and Attachment D.)

In addition to the notices sent, notice of tax offset is generally available to the public in the statutes and administrative code. Ala. Code 1975 § 40-18-100 et seq. and Administrative Code AL ADC 660-3-6 set out the procedure by which state tax refunds are offset while 42 U.S.C.A. § 664 and 45 C.F.R. 300 et seq. establish the procedure to be followed for federal tax offset. The U.S. Supreme Court precedent has made it clear that no individualized notices are required where state law or administrative remedies are established by published, generally publicly available statutes and case law. *City of West Covina v. Perkins,* 525 U.S. 234, 119 S.Ct. 628, 142 L.Ed.2d 636 (1999). *West Covina* stands for the proposition that where a state law or regulation provides statutory notice of deprivation of a protected interest and mechanisms to challenge errors, no individual notice is required. In *City of West Covina*, *supra*, the Court addressed whether a notice of seizure given to a person whose property was seized pursuant to a warrant failed to comport with due process requirements because it did not identify or describe the procedures for seeking return of the property. The Ninth Circuit, relying on *Memphis Light*, had held that the notice was defective. But the Supreme Court reversed, holding that there was no basis to "requir[e] individualized notice of state-law remedies

which…are established by published, generally available state statutes and case law."

*City of West Covina v. Perkins*, 525 U.S. at 241.  The Supreme Court also distinguished

its holding in *Memphis Light*:

> In requiring notice of the administrative procedures, however, we relied
> not on any general principle that the government must provide notice of
> the procedures for protecting one's property interests but on the fact that
> the administrative procedures at issue were not described in any publicly
> available document.  A customer who was informed that the utility
> planned to terminate his service could not reasonably be expected to
> educate himself about the procedures available to protect his interests[.]

*Id.* 242.

See *Reetz v. People of State of Michigan*, 188 U.S. 505, 509, 23 S.Ct. 390, 47

L.Ed. 563 (1903) ("When a statute fixes the time and place of meeting of any board or

tribunal, no special notice to parties interest is required.  The statute is itself sufficient

notice"); *Atkins v. Parker*, 472 U.S. 115, 131, 105 S.Ct. 2520, 2530, 86 L.Ed.2d 81

(1985) (involving mass notice of changes in the food stamp program, noting that "[t]he

entire structure of our democratic government rests on the premise that the individual

citizen is capable of informing himself about the particular policies that affect his

destiny").  In cases in which the Supreme Court has held that post-deprivation state-law

remedies were sufficient to satisfy the demands of due process and the laws were public

and available, courts have not concluded that the states must provide further information

about those procedures.  See *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82

L.Ed.2d 393 (1984).  "Neither is the right of appeal beyond the agency essential to due

process of law." *Reetz*, 188 U.S. at 508.

DHR sends pre-tax offset notices and the taxing authority sends post-offset

notices.  Information about tax offset is provided in pre-tax and post-tax offset notices.

The notices explain how tax offset can be contested by both non-custodial parents and

any current or jointly filing spouses.  Information about tax offset is available to the
general public in federal and state statute and regulations.  Commissioner Walley meets
the established criteria of *Mullane* in that all forms of the notices are "reasonably
calculated, under all the circumstances, to apprise interested parties of the pendency of
the action and afford them an opportunity to present their objections."  *Mullane,* 339 U.S.
306, 314.

### C.  DEFENDANT PROVIDES CONSTITUTIONAL PROCEDURES TO CONTEST TAX OFFSET

DHR has in place a tax specific contest procedure which can be utilized pre-tax
offset or post-tax offset.  (See Affidavit of Janice Grubbs, Exhibit 2, Page 2 and
Attachment A.)  DHR also has a general administrative hearing policy that consists of
three levels of review - informal review by the caseworker, review by the county
supervisor or a state level administrative hearing before the administrative hearing
officer.  (See Affidavit of Clifford Smith, Exhibit 3, Page 2.)  These procedures are
published in DHR policy, the Alabama Administrative Code and the Alabama Code.
(See Affidavit of Janice Grubbs, Exhibit 2, Pages 2, 5 and 6, and Affidavit of Clifford
Smith, Exhibit 3, Page 2 and 3.)

"The essential requirements of due process…are notice and an opportunity to
respond before adverse action is taken."  *Mathews v. Eldridge*, 424 U.S. 319, 335, 96
S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).  Due process requires "a meaningful opportunity to
be heard."  *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287
(1970); accord *LaChance v. Erickson*, 522 U.S. 262, 118 S.Ct. 753, 139 L.Ed.2d 695
(1998).

Courts have used the factors established in *Mathews v. Edridge* to decide what process is due.  In *Mathews v. Edridge*, the Supreme Court applied a three-factor test to determine whether the plaintiff had received all the process he was due under the Due Process Clause in the context of a challenge to hearing procedures:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; accord *Zinermon*, 494 U.S. at 127, 110 S.Ct. at 984; *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-543, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

DHR has in place both a tax specific administrative hearing procedure and a general administrative hearing procedure.  The tax specific procedures are adopted and outlined in DHR's Child Support Policy and Procedure's Manual at Chapter Ch. 9.8 and are also addressed in the Alabama Administrative Code at r. 660-3-6-.08.  (See Affidavit of Janice Grubbs, Exhibit 2, Pages 2 and 5, and Attachments "A" and "D").  The general administrative hearing procedures are outlined in DHR's Child Support Policy and Procedure's Manual at Chapter Ch. 14 and are also addressed in the Alabama Administrative Code at r. Chapter 660-1-5 and 660-3-15.  (See Affidavit of Clifford Smith, Exhibit 3, Pages 1 and 2, and Attachment "A".)

Janice Grubbs, a policy analyst with DHR, describes the tax specific procedural due process available to non-custodial parents and their spouses prior to the tax offset.

> After receiving the pre-offset notice, and prior to the tax refund being offset, the non-custodial parent or their spouse may contest the federal or state tax offset either by writing to the local county DHR office or by orally requesting a review.  Upon receiving the contest, the caseworker

24

reviews the child support arrearage to determine if the amount is correct. If the issue cannot be resolved by the caseworker the case is forwarded to the supervisor for review.  If the issue still cannot be resolved, the non-custodial parent or their spouse is instructed to request an administrative hearing as provided for under Alabama Administrative Code 660-1-5.

(See Affidavit of Janice Grubbs, Exhibit 2, Page 5.)

After tax offset has occurred, DHR has tax-offset specific administrative hearing procedures in place for the non-custodial parent and their spouse post tax refund offset. Janice Grubbs, a policy analyst with DHR, describes in detail the procedural due process available to spouses of non-custodial parents after the tax offset.

In addition to Chapter 9.8 of the Child Support Policy and Procedures Manual, state post-tax offset contest procedures are also addressed at *Ala. Code 1975*, §40-18-103. When the non-custodial parent's spouse asks DHR to refund his/her portion after the state tax offset has occurred, the Alabama Department of Revenue is not responsible for determining the spouse's portion or returning it to him/her.  DHR instructs the non-custodial parent and spouse to provide copies of their state tax return and their W-2s.  Upon receiving the documents, DHR determines the spouse's percentage of the total gross income of both taxpayers.  DHR then multiplies that percentage with the state refund amount to determine the spouse's portion of the state refund and refunds that amount to the spouse. If the non-custodial parent or their spouse fails to submit his/her written hearing request to contest within the 30-day period, Ala. Code 1975 § 40-18-103(c) provides (s)he will have waived their opportunity to contest the setoff.

When a joint federal income tax refund has been offset, the non-custodial parent's spouse may file a Form 8379, Injured Spouse Claim and Allocation.  Form 8379 should be attached to the top of the Form 1040 or 1040A when filing the tax return with the IRS, or be filed according to the other instructions as indicated on the Form 8379.

(See Affidavit of Janice Grubbs, Exhibit 2, Pages 6 and 7.)

Per Ala. Code 1975 § 40-18-104 the non-custodial parent or the spouse of the to be followed when a tax payer, be it a non-custodial parent or their spouse, wishes to contest the state tax refund offset after the tax offset has occurred.   Per Ala. Code 1975 §

40-18-104 the non-custodial parent or the spouse of the non-custodial parent has 30 days

from the date of the post-offset notice to request an administrative hearing.  After the

hearing DHR provides the taxpayer notice of the hearing decision.  If the hearing officer

determines the arrearage amount certified for tax offset was incorrect, DHR will modify

the arrearage amount certified.  DHR's child support case management computer system

known as Alabama Location Enforcement Collection System (ALECS) will

automatically identify the offset amount that can be retained and applied to the non-

custodial parent's debt(s).  (See Affidavit of Janice Grubbs, Exhibit 2, Page 6; and see

Page 9-47 of Chapter 9.8 of the Child Support Policy and Procedure Manual, Exhibit 2,

Attachment 1.)  If the offset amount exceeds the amount determined in the hearing

decision, ALECS will send a tickler to the child support worker prompting a refund to the

non-custodial parent's debt(s).  (See Page 9.47 of Chapter 9.8 of the Child Support Policy

and Procedure Manual, Exhibit 2, Attachment 1.)

DHR also has a general administrative hearing process that is not tax refund offset

specific and that may be utilized by a custodial parent, a non-custodial parent or other

directly affected individual (or their representative).  The general administrative hearing

procedures are adopted and outlined in DHR's Child Support Policy and Procedure's

Manual at Chapter 14 and are codified at Administrative Code Chapters 660-1-5 and 660-

3-15  (See Affidavit of Clifford Smith, Exhibit 3, Page 2 and Attachment A.)

Clifford Smith, policy analyst for DHR, describes the general administrative

hearing procedure in his affidavit.

"The Department of Human Resources has an administrative
hearing policy in place which is addressed in Section Fourteen of the
Child Support Policy and Procedures Manual.  (A copy of Chapter 14 is
attached and labeled as Attachment "A".)   The administrative hearing

process may be implemented by a custodial parent, a non-custodial parent or any other directly affected individual (or their representative).

"The affected individual has the right to request a review of any action or inaction taken by the Department of Human Resources. The person may request a conference with the child support worker who has been handling the case or may request a review of the case at the county level without a conference with the worker. The affected individual may also request an administrative hearing at the State Office level of Child Support Enforcement. The request for any of these three options must be submitted in writing to the County Department of Human Resources that is handling the child support case or to the State Office of Child Support Enforcement.

"Upon accepting a hearing request, the applicant is notified of the time and date of the hearing and sent copies of the hearing procedures, instructions for hearings by telephone, a Telephone Hearing Consent form, and the Alabama Department of Human Resources Administrative Code, Chapter 660-1-5. A written decision concerning the outcome of the hearing must be issued within 30 days of the date of the hearing, unless waived by both parties. Within 15 days of the issuance of the hearing decision, the applicant may file a request for a rehearing. Section 14.4.11(b) of the Child Support Policy and Procedures Manual outlines the criteria used to determine if a rehearing should be granted. A party dissatisfied with the hearing may file a notice of appeal with the agency and a petition for judicial review in the circuit court within thirty days after receiving the final hearing decision or receiving the results of an application for rehearing. The judicial review of administrative decisions is governed by *Ala. Code 1975*, § 41-22-20.

"The Alabama Department of Human Resources Administrative Code Chapters 660-1-5 and 660-3-15 outline all rules and procedures for administrative hearings with the Department of Human Resources. The Alabama Legislature has made this information available to the public from the Legislative Reference Service, from the Supreme Court Law Library, and through legal electronic databases. Further, the Administrative Code is available on line at the official website of the State of Alabama at http://alabamaadministrativecode.state.al.us/docs/hres/index.html.

(Affidavit of Clifford Smith, Exhibit 3, Attachment A.)

In a case factually similar to this case, the United States District Court in Colorado applied the *Mathews v. Edridge* standard when it determined that the procedures established by the Internal Revenue Service for withholding a taxpayer's portion of her tax refund to satisfy her husband's child support obligation satisfied

procedural due process.  In *Rucker v. Secretary of Treasury of U.S.,* 634 F.Supp. 598, 602

(D.Colo.1986) the spouse of a custodial parent filed a joint federal tax return with her

husband who owed child support arrears.  The IRS intercepted the entire tax refund.  No

notice or opportunity to contest the intercept was given to the plaintiff prior to the tax

offset.  The IRS claimed 42 U.S.C. § 664 as authority for the tax offset.  The *Rucker*

plaintiff contacted the state child support enforcement agency and then the IRS

requesting a return of her portion of the tax refund.   Plaintiff was instructed to, and did,

file an amended federal tax return and received her proportionate share of the refund.

Subsequent to filing the amended return but prior to receiving a refund she filed suit.

Following the *Mathews v. Edridge* standard, the Court in *Rucker* recognized the

non-obligated spouse's property interest in her tax refund.

> The property interest at issue here is the non-obligated spouse's interest in
> his or her tax refund. A tax refund is not a subsidy; it is the restoration to a
> taxpayer of his or her own funds. The interception of the refund is a
> diversion of the taxpayer's property. *See, e.g., Nelson v. Regan,* 560
> F.Supp. 1101, 1108 (D.Conn.1983); *Sorenson v. Secretary of the
> Treasury,* 557 F.Supp. 729, 738, (W.D.Wash.1982), *aff'd,* 752 F.2d 1433
> (9th Cir.), *cert. granted,* 472 U.S. 1016, 105 S.Ct. 3475, 87 L.Ed.2d 611
> (1985).

*Rucker v. Secretary of Treasury of U.S.,* 634 F.Supp. 598, 602  (D.Colo.1986).  The

property interests of the plaintiff in this case and in *Rucker* are the same.

The *Rucker* Court also recognized the significant government interest that the

State has in recouping monies owed for child support and noted that the entire dilemma

could be avoided if the non-obligated spouse filed separately.

> The government interest, however, is also undeniably significant. The
> intercept program gives the state the opportunity to recoup the amount of
> assistance payments which it has been compelled to advance because a
> judgment debtor has defaulted. The benefits of this policy accrue directly
> to the citizenry.

> The non-obligated spouse has a recognized interest in obtaining her tax refund, *Marcello v. Regan,* 574 F.Supp. 586, 596 (D.R.I.1983) and the government has a significant interest in implementing the intercept program. (The entire problem could be avoided if the non-obligated spouse filed a separate return.)

*Rucker v. Secretary of Treasury of U.S.,* 634 F.Supp. 598, 602 (D.Colo.1986). Again, the government interest in recouping child support is the same in *Rucker* as in this case.

The *Rucker* Court found that the second *Mathews v. Eldridge* factor, the adequacy of the due process procedures of filing an amended return, was constitutionally adequate.

> The second *Eldridge* factor concerns the adequacy of procedures to guard against the risk of erroneous deprivation. The filing of the amended return (the 1040X), which allows the IRS to determine the amount of the non-obligated spouse's allocable share of the refund, is a straightforward procedure involving minimal calculations. It does not require factual determinations or involve issues of credibility. Since the filing of an amended return involves only simple calculations, no further procedural safeguards are necessary because of the low risk of error.

*Rucker v. Secretary of Treasury of U.S.*, 634 F.Supp. 598, 603 (D.Colo.1986). Another similarity between these cases is that a post-offset notice was sent after the tax offset and a remedy for the return of the spouse's portion of the tax refund existed in the *Rucker* case and in this case. This case differs from the *Rucker* case because in the *Rucker* case only a post-offset notice was sent. DHR sends a pre-offset notice in addition to the post-offset notice that is sent by the taxing authority. (See Affidavit of Janice Grubbs, Exhibit 2, Pages 2 and3 and Attachment B.) More importantly, in *Rucker* the spouse filed a timely contest in the form of an amended tax return. In this case when the 2005 tax refund was offset the plaintiff did not contest the offset until December 13, 2006, almost six months after she was sent the post-offset notice that the taxes had been offset. (See Affidavit of Ke'Asha Howard, Exhibit 1, Page 2 and Attachment B.) The spouse in *Rucker* took advantage of the contest procedure available while the plaintiff in this case

29

did not.  This time plaintiff did timely file a contest.  Coincidentally, however, the entire

2006 refund was returned because the arrears balance had been reduced to zero.   (See

Affidavit of Ke'Asha Howard, Exhibit 1, Page 3.)

> The third factor requires the balancing of complex governmental
> machinery with ideal concepts of procedural "fairness." Generally
> recognized concepts of "fairness" consist of pre-deprivation notice and
> formal hearing. *See, e.g., Mitchell v. W.T. Grant, Co.,* 416 U.S. 600, 94
> S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92
> S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90
> S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp. of
> Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

*Rucker v. Secretary of Treasury of U.S..*  634 F.Supp. 598, 602 -605 (D.Colo.1986).

The *Rucker* Court found that the IRS satisfied due process considering the large

number of tax offsets versus to the small number of non-obligated spouses whose share

of a joint tax return was impacted.  DHR's multi agency process versus fairness to the

individual goes beyond the due process provided the *Rucker* court in that DHR provides a

pre-deprivation notice.

The Court in *Rucker*, after applying the *Mathews v. Edridge* standard, found that

the procedures established by the IRS satisfied due process.

> Considering the plaintiff's interest, the substantial government interest, the
> large number of tax offsets compared to the relatively small number of
> non-obligated spouses whose share of a joint tax return will be adversely
> affected, and the reasonableness and efficiency of the system, the
> procedures established by the IRS satisfy procedural due process.

*Rucker v. Secretary of Treasury of U.S..* 634 F.Supp. 598, 602 -

605 (D.Colo.1986).  Likewise, DHR's procedures satisfy procedural due process.

To succeed on a procedural due process claim under § 1983, a plaintiff must

establish "(1) a constitutionally protected interest in life, liberty, or property;

(2) governmental deprivation of that interest; and (3) the constitutional inadequacy of

procedures accompanying the deprivation." *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357 (11th Cir. 1992); *see also Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995). It is acknowledged that taxpayers have a constitutionally protected interest in their tax return. Also, in this case DHR has deprived the taxpayer of their refund. Those two elements alone, however, are not sufficient to succeed on a procedural due process claim. "Failure to establish any one of these elements is fatal to [the] due process claim." *Bank of Jackson County*, 980 F.2d at 1357. In this case there are constitutional adequate notice and due process procedures accompanying the deprivation.

In *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (*en banc*), the Eleventh Circuit stated that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise." It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim. *See id.*; *see also Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. (11th Cir. 1999); *Harris v. Board of Education of the City of Atlanta*, 105 F.3d 591, 596 (11th Cir. 1997). This rule (that a § 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate forum agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation. *See McKinney*, 20 F.3d at 1560; *see also Horton v. Board of County Commissioners and Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000).

The Alabama statutes, the Administrative Code and DHR's policy provide a constitutionally adequate tax specific and a general administrative hearing process that is available to non-custodial parents and their spouses. The procedures are available prior to tax offset and after tax offset. To succeed on a procedural due process claim under § 1983, a plaintiff must establish "(1) a constitutionally protected interest in life, liberty, or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation." *Bank of Jackson County v. Cherry*, 980 F.2d 1354, 1357 (11th Cir. 1992); *see also Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995). "Failure to establish any one of these elements is fatal to [the] due process claim." *Bank of Jackson County*, 980 F.2d at 1357. Plaintiff cannot prove the third element of "the constitutional inadequacy of procedures accompanying the deprivation." In this case there are constitutional adequate notice and due process procedures accompanying the deprivation. Plaintiff's failure to engage in those procedures does not make them inadequate.

### D.  PLAINTIFF FAILED TO TAKE ADVANTAGE OF COMPLAINT PROCEDURES

If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process. *See McKinney*, 20 F.3d at 1565 ("The fact that [McKinney] failed to avail himself of the full procedures provided by state law…does not constitute a sign of their inadequacy."); *Bell v. City of Demopolis, Ala.*, 86 F.3d 191, 192 (11th Cir. 1996); *Narey v. Dean*, 32 F.3d 1521, 1528 (11th Cir. 1994). And, to be adequate, the state procedure need not provide all the relief available under § 1983. *See McKinney*, 20 F.3d at 1564. Instead, the state procedure must be able to correct whatever deficiencies

exist and to provide plaintiff with whatever process is due. *See Cotton v. Jackson*, 216 F.3d 1328, 1333 (11th Cir. 2000). ("[b]ecause we believe a writ of mandamus would be available under state law . . . we conclude that Plaintiff has failed to show that inadequate state remedies were available.").

In her complaint, plaintiff alleges that her portion of the jointly filed income tax refund was offset without notice to her and without an adequate complaint procedure. Ala. Code 1975 § 40-18-103(c) provides that at the time a state tax refund is offset a post-offset notice shall be sent by the Department of Revenue. That statute requires the notice specifically inform spouses filing joint tax returns with someone that owes a debt subject to tax offset that the spouse must request in writing a hearing with the DHR within 30 days of the date of the mailing of the notice. Failure to request a hearing in writing within thirty days operates as a waiver to contest the tax refund offset. Ala. Code 1975 § 40-18-103(c) reads as follows:

> [A] taxpayer is entitled to receive a refund if it is due him regardless of the debt asserted against his spouse, and that in order to obtain a refund due him such taxpayer must apply, in writing, for a hearing with the claimant agency named in the notice within 30 days of the date of the mailing of the notice. If a taxpayer fails to apply in writing for such a hearing within 30 days of the mailing of such notice, he will have waived his opportunity to contest the setoff.

Alabama Administrative Code at r. 660-3-6-.03(2) specifically addresses joint tax returns and provides

> If a joint return has been filed and a joint refund is to be made, the notice must give the name of the taxpayer who has no debt claimed against him. The notice will state that such taxpayer is entitled to a refund if it is due regardless of the debt claimed against the spouse. The taxpayer must apply in writing for a hearing within thirty (30) days of the mailing of the notice.

The 2005 tax refund was the only refund not returned by DHR. (See Affidavit of Ke'Asha Howard, Exhibit 1, Page 2.) On July 31, 2006, DHR received the state joint tax refund for tax year 2005 in the amount of $1,109. Per Ala. Code 1975 § 40-18-103(c) "At the time of the transfer of funds to a claimant agency pursuant to subsection (b) of this section, the department shall notify the taxpayer or taxpayers whose refund is sought to be set off that the transfer has been made." "Concurrent with the tax refund offset, the second notice of the tax offset is sent by either the Alabama Department of Revenue, in the case of a state refund, or the Federal Department of Treasury's Financial Management Service if the refund is a result of a federal income tax return." (See Affidavit of Janice Grubbs, Exhibit 2, Pages 3 and 4.) Therefore, the post-tax offset notice was sent and thirty day time period to contest the offset began running on July 31, 2006. Plaintiff did not contest the tax offset within thirty days as required by Ala. Code 1975 § 40-18-103(c). Neither Louise Shaddix, DHR's current administrative hearing officer nor Cliff Smith, the former administrative hearing officer, received a request for as administrative hearing from plaintiff. (Affidavit of Louise Shaddix, Exhibit 4 and Affidavit of Cliff Smith, Exhibit 3, Page 1.) DHR received no communication contesting the tax offset until almost six months after the taxes were offset. (See Affidavit of Ke'Asha Howard, Exhibit 1, Page 2.) Therefore the plaintiff waived her right to the return of that tax refund.

In January 2006, Mr. Wooten's case met the criteria for tax offset. DHR's child support case management computer system known as Alabama Location Enforcement Collection System (ALECS) generated a pre-tax offset notice to Rodney Wooten on January 3, 2006, notifying him that when he filed his taxes any refund up to the amount of child support arrears that he owed would be offset. The notice also outlined any steps his spouse could take to contest the tax offset. On July 31, 2006, DHR received the state joint tax refund for tax year 2005 in the amount of

$1,109. (A copy of Rodney Wooten's pay history is attached and labeled as Attachment "A".)    I did not receive any communication from either Rodney Wooten or his current wife, Tracy Wooten, contesting the tax offset until January 2007.

On January 2, 2007, I received a December 13, 2006, letter from Tracy Wooten requesting that her portion of the jointly file 2005 Alabama taxes that were intercepted be refunded back to her. (A copy of Tracy Wooten's letter is attached and labeled as Attachment "B".)    On January 4, 2007, I sent a letter was sent to Rodney Wooten instructing him of steps his spouse might take for the return of the tax refund. (A copy of the letter to Rodney Wooten is attached and labeled as Attachment "C".)    Almost six months had passed since the tax refund had been received and the thirty days in which the Tracy Wooten had to contest the state tax offset had expired. Rodney Wooten's pay history shows that the offset of the 2005 joint tax refund is the only tax offset received by DHR that was not refunded. (Attachment "A".)

(Affidavit of Ke'Asha Howard, Exhibit 1, Page 2.)

As pointed out in the affidavit of Ke'Asha Howard, the offset of the 2005 tax refund was the only tax offset received by DHR that was not returned. The offset of the 2006 state tax refund was returned because after Mr. Wooten was certified for tax offset the Montgomery County Circuit Court entered an order reducing his arrears balance to zero. (Affidavit of Ke'Asha Howard, Exhibit 1, Page 2.) On March 29, 2007, Tracy Wooten sent a letter to the Montgomery County DHR requesting her portion of the joint tax refund from the 2006 state taxes that was offset. (Affidavit of Ke'Asha Howard, Exhibit 1, Page 3.) If the non-custodial parent's arrears balance is reduced to zero after being certified for tax offset or if there is any money remaining from the refund after the arrears are paid, the excess money is returned to the non-custodial parent. (See Affidavit of Janice Grubbs, Exhibit 2, Page 6; and see Page 9-47 of Chapter 9.8 of the Child Support Policy and Procedure Manual, Exhibit 2, Attachment 1.) Had the arrears balance not been reduced to zero this timely contest would have triggered the return of the plaintiff's portion of the 2006 tax refund. On April 10, 2007, the entire $390 offset from

the 2006 State tax refund was returned to the Wootens.  (Affidavit of Ke'Asha Howard, Exhibit 1, Page 3.)

Knowledge of how to contest the tax offset was provided to plaintiff through specific notice and by the statutes and administrative code that address the subject.  Per the affidavit of Janice Grubbs (Exhibit 2, Attachment B), a pre-tax offset notice is sent by DHR.  A post-tax offset notice is sent by the taxing authority.  Ala. Code 1975 § 40-18-103(c) sets out the procedure for contest. (See Affidavit of Janice Grubbs, Exhibit 2, Attachment C.)    Alabama Administrative Code at r. 660-3-6-.08 provides information on contesting the tax offset.  (See Affidavit of Janice Grubbs, Exhibit 2, Attachment D.) Chapters 9.8 and 14 of the Child Support Policy and Procedures Manual address the procedure to contest tax offset.  (For Chapter 9.8 see Affidavit of Janice Grubbs, Exhibit 2, Attachment A and for Chapter 14 see the Affidavit of Clifford Smith, Exhibit 3, Attachment A.)  Alabama law gives "[e]very citizen the…right to inspect and take a copy of any public writings of th[e] state."   ALA.CODE §§ 36-12-40 and 41-13-1.   (See Affidavit of Clifford Smith, Exhibit 3, Attachment A.)   The Alabama Department of Human Resources Administrative Code Chapters 660-1-5 and 660-3-15 outline all rules and procedures for administrative hearings with the Department of Human Resources. The Alabama Legislature has made this information available to the public from the Legislative Reference Service, from the Supreme Court Law Library, and through legal electronic databases.  Further, the Administrative Code is available on line at the official website of the State of Alabama at http://alabamaadministrativecode.state.al.us/docs/hres/index.html.  (See Affidavit of Clifford Smith, Exhibit 3.)

While DHR has taken numerous steps to make the public aware of the procedure to contest tax-offset, it is constitutionally immaterial whether non-custodial parents and their spouses are personally and individually aware of these publicly available policies and procedures.  DHR rules have the force and effect of law.  *Parsons v. State*, 251 Ala. 467, 38 So.2d 209 (ALA. 1948) (a regulation by a department of government has force and effect of law); *State v. Friedkin*, 244 Ala. 494, 14 So.2d 363 (ALA. 1943) (rules, regulations and general orders of administrative authorities pursuant to powers delegated to them have force and effect of laws).  "All citizens are presumptively charged with knowledge of the law."  *Atkins v. Parker*, 472 U.S. at 130, 105 S.Ct. at 2529 (involving mass notice of changes in the food stamp program).  Persons are "presumed to know the law," *Atkins*, *supra*, and "capable of informing [themselves] about the particular policies that affect [their] destiny," *Id.*, through "published, generally available state statutes and case law," *City of West Covina*, *supra*.

### E.   TITLE IV-D OF THE SOCIAL SECURITY ACT DOES NOT CREATE A FEDERALLY ENFORCED RIGHT

Title IV-D of the Social Security Act as codified at 42 U.S.C 651 through 669b is a set of funding statutes which authorizes the federal government to provide fundi*n*g to Alabama to operate a child support program under it own state statutes so long as Alabama meets the criteria set out in Title IV-D of the Social Security Act.    Federal statute 42 U.S.C. § 651, "Authorization of appropriations," states:

> For the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for assistance under a state program funded under part A of this subchapter) for whom such assistance is requested, there is

hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

Compliance with Title IV-D is with the Secretary as outlined in 42 U.S.C. § 652(a)(1) which states as follows:

" *(a) Establishment of separate organizational unit; duties*

The Secretary shall establish, within the Department of Health and Human Services a separate organizational unit, under the direction of a designee of the Secretary, who shall report directly to the Secretary and who shall-

*(1)* establish such standards for State programs for locating noncustodial parents, establishing paternity, and obtaining child support and support for the spouse (or former spouse) with whom the noncustodial parent's child is living as he determines to be necessary to assure that such programs will be effective;" 42 U.S.C.A. § 652(a)(1) (West Supp.2007).

Offset of state tax refunds by the Alabama Department of Revenue for the collection of child support arrears on behalf of DHR is mandated under federal law at 42 U.S.C. 666 (a)(3).  Federal tax offset is mandated by 42 U.S.C.A. § 652.

It is well settled that § 1983) provides a private cause of action for violations of federal statutes.  *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). There are two exceptions to this rule:  (1) where the statute does not create enforceable rights and (2) where Congress has foreclosed enforcement of the statute in the enactment itself. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990).  First, a § 1983 action is unavailable if the statute does not create enforceable rights.  In other words, the statutory provision at issue must be intended to benefit the plaintiff.  *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990); *Maynard v. Williams*, 72 F.3d 848, 852 (11th Cir. 1996) ("For an action to be cognizable under § 1983, it is not enough that the conduct in question merely violates federal law—that violation must trammel a 'right' secured by

federal law."); *Wehunt v. Ledbetter*, 875 F.2d 1558, 1563 (11th Cir. 1989) ("Section

1983) does not encompass claims based upon statutory violations if…(2) Congress has

not created enforceable rights in the relevant statutory provisions.") (holding that Title

IV-D is not enforceable under § 1983).

In three recent opinions on private actions to enforce spending legislation, the

United States Supreme Court has held (once unanimously and twice by votes of 7-2) that

the statutes Title IV-D and similar federal spending legislation did *not* confer enforceable

rights on the private plaintiffs.  In *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118

L.Ed.2d 1 (1992), the Court found no basis for a § 1983 suit brought to enforce

provisions of the Adoption Assistance and Child Welfare Act of 1980, which "required

States receiving funds for adoption assistance to have a 'plan' to make 'reasonable

efforts' to keep children out of foster homes."  The Court in *Suter* determined that:

> Careful examination of the language…does not unambiguously confer an
> enforceable right upon the Act's beneficiaries.  The term "reasonable
> efforts" in this context is at least as plausibly read to impose only a rather
> generalized duty on the State, to be enforced not by private individuals,
> but by the Secretary in the manner of [reducing or eliminating payments].

*Suter*, 503 U.S. at 363, 112 S.Ct. 1370.

In *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997),

the United States Supreme Court held that provisions in Title IV-D of the Social Security

Act that required states receiving federal child welfare funds to "operate its child support

program in 'substantial compliance' with Title IV-D were not intended to benefit

individual children and custodial parents, and therefore [did] not constitute a federal

right."  *Blessing v. Freestone* 520 U.S. at 343, 117 S.Ct. 1353.  Instead, the Court found

that, "[f]ar from creating an *individual* entitlement to services, the standard is simply a

yardstick for the Secretary to measure the *system-wide* performance of a State's Title IV-D program." *Id.* (emphasis in the original).

Finally, in another recent relevant opinion, *Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), the Supreme Court held that an action under § 1983 to enforce certain privacy provisions of the Family Educational Rights and Privacy Act ("FERPA"), i.e. 20 U.S.C. § 1232g, was foreclosed because the relevant FERPA provisions created no personal rights which were enforceable under § 1983. *See Gonzaga* at 122 S.Ct. at 2271. In reaching its decision, the Supreme Court discussed its decision in *Blessing*, noting that language in that case may have been read to "suggest that something less than an unambiguously conferred right is enforceable by § 1983." --- *Gonzaga* at 122 S.Ct. at 2275. Specifically, the Supreme Court pointed to *Blessing*'s use of three " 'factors' to guide judicial inquiry into whether or not a statute confers a right." Those factors were:

> "Congress must have intended that the provision in question benefit the plaintiff," "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms."

*Gonzaga University v. Doe*, 536 U.S. at 282 (quoting *Blessing*, 520 U.S. at 340-341, 117 S.Ct. 1353).

> This court has recently held that *Gonzaga* essentially requires a separate "condition precedent" type analysis before conducting a *Blessing* analysis to determine if a federal statute creates a federal right.

*Schwier v. Cox*, 340 F.3d 1284, 1290-1291 (11th Cir. 2003) ("before we analyze the application of the *Blessing* factors . . . in keeping with *Gonzaga*, we must first ask whether Congress created an unambiguously conferred right.").

In *31 Foster Children*, the Eleventh Circuit has further explained that, with

Spending-Clause legislation (such as Title IV-D, involved in this case, and Title IV-E,

adoption and foster care assistance involved in *31 Foster Children*), Congress must

"clearly" and "unambiguously" express its intent to confer individual rights in order for

the statute to be enforceable.  The Eleventh Circuit stated the principle as follows:

> We emphasize, as did the Court in *Gonzaga*, that in cases brought
> to enforce legislation enacted pursuant to Congress' spending power, such
> as the Adoption Act, Congress must "speak with a clear voice" and
> manifest an "unambiguous" intent to confer individual rights before
> federal funding provisions will be read to provide a basis for private
> enforcement.  *Id.* at 280, 122 S.Ct. at 2273 (citing *Pennhurst State Sch. &
> Hosp. v. Halderman*, 451 U.S. 1, 17, 28 & n. 21, 101 S.Ct. 1531, 1540,
> 1545 & n. 21, 67 L.Ed.2d 694 (1981)).  "In legislation enacted pursuant to
> the spending power, the typical remedy for state noncompliance with
> federally imposed conditions is not a private cause of action for
> noncompliance but rather action by the Federal Government to terminate
> funds to the State."  *Pennhurst*, 451 U.S. at 28, 101 S.Ct. at 1545.  Only
> twice since *Pennhurst* has the Supreme Court held that spending
> legislation gave rise to rights enforceable via § 1983.  *See Wilder v. Va.
> Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)
> (holding that health care providers could, pursuant to § 1983, enforce the
> Boren Amendment to the Medicaid Act); *Wright v. Roanoke
> Redevelopment & Hous. Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d
> 781 (1987) (holding that the Brooke Amendment to the Housing Act
> provided a cause of action under § 1983).

*31 Foster Children*, 329 F.3d at 1268-1269.

 Congress did not create an unambiguous conferred right in Title IV-D.   In

*Walters v. Weiss*, 392 F.3d 306 (8th Cir. 2004) the Eighth Circuit Court of Appeals

reviewed a specific Title IV-D provision, 42 U.S.C. 657, relating to distribution of child

support payments to custodial parents.  After applying the *Blessing* factors, the Eighth

Circuit Court of Appeals held that no enforceable right existed:

> We agree with plaintiffs that § 657(a) reflects some congressional intent to
> benefit custodial parents.  However, the *right* plaintiffs assert - - a right to
> "distribution in strict compliance with Section 657"    - - is not
> unambiguously imposed in § 657(a) as a binding obligation on the states

and, moreover, is too vague and amorphous for judicial enforcement. We therefore hold that § 657(a) does not create an individually-enforceable federal right.

*Walters v. Weiss*, 392 F.3d at 313.

This Court held in *31 Foster Children* that sections of Title IV-B (Child Welfare) and Title IV-E (Adoption and Foster Care Assistance) were not enforceable rights because the statute provided only for review by the Secretary of state programs to determine whether they were in "substantial conformity" with federal statutes and *31 Foster Children*, 329 F.3d at 1268. (Those provisions do not give plaintiffs an "unambiguously conferred right to support a cause of action brought under § 1983") quoting *Gonzaga*, 536 U.S. at 283, 122 S.Ct. at 2275. Title IV-D requires only "substantial compliance" with its provisions. In the Child Support Enforcement Amendments of 1984, P.L. 98-378, Congress amended the law by substituting "substantial compliance" for the then-existing "full compliance" test used to determine whether a state had an effective Title IV-D program. P.L. 98-378 states as follows:

> (2)    Section 402(a)(27) of such Act is amended by striking out "operate a child support program in conformity with such plan" and inserting in lieu thereof "operates a child support program in substantial compliance with such plan."

1984 U.S.C.C.A.N., 98th Cong. 2d Sess. 98 Stat 1316. The complete codified version of this change is found at 42 U.S.C. § 609(a)(8). The change from "full compliance" to "substantial compliance" further supports the argument that Congress did not intend to create any new federal rights. The Secretary has traditionally defined "substantial compliance" as 75 percent for all non-paternity establishment services. *See* 45 C.F.R. § 305.20. The Title IV-D (child support) "substantial compliance" language is similar, if not identical in fact, to the "substantial conformity" language in Title IV-B

(child welfare) and Title IV-E (adoption and foster care assistance) that the Eleventh Circuit found not to establish an enforceable right.

The Eleventh Circuit in *Arrington v. Helms,* 438 F.3d 1336 (C.A.11 2006), a case brought against the Alabama DHR alleging widespread deficiencies in Alabama's child support payment system, found that 42 U.S.C. § 657 does not confer a private right enforceable under § 1983. The Eleventh Circuit held

> When Congress enacted § 657 of Title IV-D, it did not speak with a clear voice to unambiguously manifest an intent to create enforceable rights. Pursuant to the precedent set forth in *Blessing, Gonzaga,* and *31 Foster Children,* Appellants have thus failed as a matter of law to establish § 657 provides custodial parents individual rights, enforceable under § 1983, to distribution of their payments in strict compliance with § 657.

*Arrington v. Helms,* 438 F.3d 1336, 1353 -1354 (C.A.11 2006).

The Eleventh Circuit noted that spending clause legislation and individually enforceable rights are inconsistent.

> [T]he Supreme Court and our circuit have repeatedly held "substantial compliance" provisions in Spending Clause legislation are inconsistent with individually enforceable rights. Beginning with *Blessing,* the Supreme Court addressed § 609(a)(8), Title IV-D's substantial compliance provision, and concluded: "Far from creating an *individual* entitlement to services, the [substantial compliance] standard is simply a yardstick for the Secretary to measure the *system-wide* performance of a State's Title IV-D program." 520 U.S. at 343, 117 S.Ct. at 1361 (emphasis in original).

*Arrington v. Helms,* 438 F.3d 1336, 1346 (C.A.11 2006).

After the Eleventh Circuit's decision in *Arrington*, the Fifth Circuit also found that Title IV-D of Social Security Act and federal regulations did not create a federal right enforceable through a private cause of action under § 1983. That Circuit found

> [T]he state plan requirements in § 654(4)(B) do not make it clear whether an individual right would arise based on the alleged inadequacy of the state plan's wording or from a deficiency in the enforcement efforts of the

agency. The lack of such parameters indicates that, regardless of whether the Plaintiff is an intended beneficiary of Title IV-D, Congress did not intend to give her a private right of action to challenge agency actions." *Id.* at 604-05.[FN11]

No doubt Congress meant for individuals like Cuvillier to fall within the sphere of Title-IV's benefits. As *Gonzaga University* indicates, however, this circumstance is insufficient to find a federal right secured by the statutory scheme. Congress did not intend the provisions Cuvillier relies on to give rise to an individual federal right to child support or child support collection.

*Cuvillier v. Taylor,* 503 F.3d 397, 408 (C.A.5 2007).

Title IV-D of the Social Security Act, like Title IV-B and Title IV-E, does not contain an individual enforcement mechanism but instead grants the Secretary authority to implement corrective action and withhold federal funds. Congress has not spoken with a "clear voice" on the matter to create an enforceable right, therefore, a finding cannot be made that Congress intended to create a private right of action.

### F.  THE STATUTE OF LIMITATIONS BARS ANY CLAIMS FOR THE 2005 TAX OFFSET

The statute of limitations for § 1983 suits is the general personal injury limitation for the forum state. "Because Congress has not specified a limitations period for section 1983 suits, in such cases "federal courts borrow the forum state's general personal injury limitations period." *Piotrowski v. City of Houston,* 51 F.3d 512, 514 n. 5 (5th Cir.1995). Per Ala. Code 1975 § 6-2-38 (l) "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

The complaint in this case was filed August 2, 2007. Only one joint tax refund offset resulted a refund being retained by DHR and forwarded to the custodial parent.

"Rodney Wooten's pay history shows that the offset of the 2005 joint tax refund is the only tax offset received by DHR that was not refunded." (Affidavit of Ke'Asha Howard, Exhibit 1, Page 2 and Attachment A.) DHR received that tax refund offset on July 31, 2006. "On July 31, 2006, DHR received the state joint tax refund for tax year 2005 in the amount of $1,109." (Affidavit of Ke'Asha Howard, Exhibit 1, Page 2 and Attachment A.)

"At the time of the transfer of funds to a claimant agency pursuant to subsection (b) of this section, the department shall notify the taxpayer or taxpayers whose refund is sought to be set off that the transfer has been made." "Concurrent with the tax refund offset, the second notice of the tax offset is sent by either the Alabama Department of Revenue, in the case of a state refund, or the Federal Department of Treasury's Financial Management Service if the refund is a result of a federal income tax return." (See Affidavit of Janice Grubbs, Exhibit 2, Pages 3 and 4.) Plaintiff knew prior to July 31, 2006, that her joint tax refund had been offset. Therefore a two year statute of limitations prevents suit for the offset of the 2005 tax refund offset.

"The limitations period starts to run when the plaintiff becomes aware or has sufficient information to know that he or she suffered an injury. *Piotrowski,* 51 F.3d at 516." *Cuvillier v. Taylor*, 503 F.3d 397, 402 (C.A.5 2007). Based upon the above the statute of limitations bars any recovery for the 2005 tax refund offset.

### G.  THE FIFTH AMENDMENT DOES NOT APPLY TO STATE GOVERNMENT

Count One of the plaintiff's complaint alleges a violation of civil rights under 42 U.S.C. § 1983 by and through the Fifth Amendment of the United States Constitution. The Fifth Amendment does not apply to state governments but only to federal

governments.  As the federal government is not a party to this case, Count One is due to

be dismissed.

> Our Supreme Court has stated:

> The Due Process Clause of the Fifth Amendment prohibits the United
> States, as the Due Process Clause of the Fourteenth Amendment prohibits
> the States, from depriving any person of property without "due process of
> law."

> Dusenbery v. U.S.  534 U.S. 161, *167, 122 S.Ct. 694, **699 (U.S.,2002)
> The Fourteenth Amendment applies to actions by a State. The claimed
> association in this case is between the USOC and the Federal Government.
> Therefore, the Fourteenth Amendment does not apply. The Fifth
> Amendment, however, does apply to the Federal Government and contains
> an equal protection component. *Bolling v. Sharpe,* 347 U.S. 497, 499, 74
> S.Ct. 693, 694, 98 L.Ed. 884 (1954). "This Court's approach to Fifth
> Amendment equal protection claims has ... been precisely the same as to
> equal protection claims under the Fourteenth Amendment." *Weinberger v.
> Wiesenfeld,* 420 U.S. 636, 638, n. 2, 95 S.Ct. 1225, 1228, n. 2, 43 L.Ed.2d
> 514 (1975).

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 543, 107

S.Ct. 2971, 2984 (U.S.Cal.1987).

This Court in a very recent case has also recognized that liability of a state

government cannot be based upon the Fifth Amendment because it only applies to the

federal government.

> Second, the Fifth and Fourteenth amendments contain a due process
> clause, and Hooper has cited both amendments in Count I. The Fifth
> Amendment Due Process Clause, however, cannot provide a basis for
> liability because it "applies only to the federal government." *Sweatt v.
> Bailey,* 876 F.Supp. 1571, 1582 (M.D.Ala.1995); *see also Riley v. Camp,*
> 130 F.3d 958, 972 n. 19 (11th Cir.1997) (noting that, regarding the
> plaintiff's substantive due process claim, "[t]he Fifth Amendment
> obviously does not apply ... -the acts complained of were committed by
> state rather than federal officials"); *Hardy v. Town of Hayneville,* 50
> F.Supp.2d 1176, 1186 (M.D.Ala.1999) ("The Fifth Amendment restricts
> the activity of the federal government."). It is undisputed in this case that,
> at all relevant times, Wilson and Lamb were acting as City of

Montgomery officials and not as federal actors. ( *See* Compl. ¶¶ 4-5.) Accordingly, the court finds that Hooper's § 1983 claim under the Fifth Amendment is due to be dismissed.

*Hooper v. City of Montgomery,* 482 F.Supp.2d 1330, 1335 (M.D.Ala.2007).

In cases in which state liability is based upon the Fifth Amendment the case or

count is due to be dismissed or summary judgment granted.

The Fifth Amendment's due-process clause applies only to the federal government. *Bartkus v. State of Illinois,* 359 U.S. 121, 124, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Because Strickland has alleged no federal participation, summary judgment will be granted to the extent Strickland relies on the Fifth Amendment.

*Strickland v. City of Dothan, AL*  399 F.Supp.2d 1275, 1284 (M.D.Ala.2005).   Based

upon the above Count One is due to be dismissed.

## <u>CONCLUSION</u>

This Court should grant summary judgment in favor of the DHR Commissioner in

his official and individual capacities.


RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL

SHARON E. FICQUETTE
ASSISTANT ATTORNEY GENERAL
STATE OF ALABAMA

s/ Jennifer M. Bush_____
JENNIFER M. BUSH (BUS016)
Assistant Attorney General
State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Jennifer. Bush@dhr.alabama.gov
Phone:  (334) 242-9330
Fax:  (334) 242-0689
ATTORNEYS FOR PAGE WALLEY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 12, 2008, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the

following:

Keith Anderson Nelms
847 South McDonough Street
Montgomery, AL 36104

<div style="text-align: right">

s/ Jennifer M. Bush
JENNIFER M. BUSH (BUS016)
Assistant Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama  36130-4000
Phone:  (334) 242-9330
Fax:  (334) 242-0689

ATTORNEY FOR PAGE WALLEY

</div>

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRACY WOOTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:07-cv-701-WKW** |
| | ) | |
| **PAGE WALLEY, Commissioner** | ) | |
| **of the Alabama Department of** | ) | |
| **Human Resources, in his official** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**EVIDENTIARY MATERIALS IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT BY DEFENDANT WALLEY**

COMES NOW Defendant Dr. Page Walley, Commissioner of the Alabama Department of Human Resources, in his official and individual capacities, by and through his undersigned counsel, and, in support of his Motion for Summary Judgment, filed contemporaneously herewith, submits to this Court the following:

1.     Affidavit of Ke'Asha Howard;

       Attachment A:  Rodney Wooten's pay history;

       Attachment B:  December 13, 2006, letter from Tracy Wooten;

       Attachment C:  January 4, 2007, letter to Rodney Wooten;

       Attachment D:  February 5, 2007, court order;

       Attachment E:  Post-Offset Notice;

       Attachment F:  March 29, 2007, letter from Tracy Wooten

2.       Affidavit of Janice Grubbs;

        Attachment A:  Chapter 9.8 of the Child Support Policy and Procedure Manual;

        Attachment B:  Pre-Offset Notice;

        Attachment C:  Post-Offset Notice;

        Attachment D:  Alabama Administrative Code r. 660-3-6-.08

3.       Affidavit of Clifford Smith.

        Attachment A:   Chapter 14 of the Child Support Policy and Procedure Manual

4.       Affidavit of Louise Shaddix.

                 RESPECTFULLY SUBMITTED,

                 TROY KING
                 ATTORNEY GENERAL

                 SHARON E. FICQUETTE
                 ASSISTANT ATTORNEY GENERAL
                 STATE OF ALABAMA

                 s/ Jennifer M. Bush_____
                 JENNIFER M. BUSH (BUS016)
                 Assistant Attorney General
                 State of Alabama
                 Department of Human Resources
                 P.O. Box 304000
                 Montgomery, Alabama  36130-4000
                 Jennifer. Bush@dhr.alabama.gov
                 Phone:  (334) 242-9330
                 Fax:  (334) 242-0689
                 ATTORNEYS FOR PAGE WALLEY

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 12, 2008, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the following:

Keith Anderson Nelms
847 South McDonough Street
Montgomery, AL 36104

                              s/ Jennifer M. Bush_____
                              JENNIFER M. BUSH (BUS016)
                              Assistant Attorney General

                              State of Alabama
                              Department of Human Resources
                              P.O. Box 304000
                              Montgomery, Alabama  36130-4000
                              Phone:  (334) 242-9330
                              Fax:  (334) 242-0689

                              ATTORNEY FOR PAGE WALLEY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TRACY WOOTEN,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )       Civil Action No.: 2:07-cv-701-WKW
                                       )
PAGE WALLEY, Commissioner              )
of the Alabama Department of           )
Human Resources, in both his           )
individual and official capacities,    )
                                       )
Defendant.                             )

## AFFIDAVIT

Before me, the undersigned authority, personally appeared **KE'ASHA HOWARD**, who is known to me and who, having been first duly sworn, deposes and states as follows:

"My name is Ke'Asha Howard.  I am a resident of Montgomery County, Alabama, am over the age of 19 years, and am competent to testify as to the matters contained in this affidavit.

"I am employed by the State of Alabama Department of Human Resources as a Financial Support Worker.  I have been employed in the capacity of Child Support Case Manager for two years.  I have been employed by the Department of Human Resources for a total of two years.

I was the caseworker assigned to Rodney Wooten's child support case from 9/29/06 to 5/31/07 and I have reviewed Rodney Wooten's child support file.

1



EXHIBIT

1

In January 2006, Mr. Wooten's case met the criteria for tax offset. DHR's child support case management computer system known as Alabama Location Enforcement Collection System (ALECS) generated a pre-tax offset notice to Rodney Wooten on January 3, 2006, notifying him that when he filed his taxes any refund up to the amount of child support arrears that he owed would be offset. The notice also outlined any steps his spouse could take to contest the tax offset. On July 31, 2006, DHR received the state joint tax refund for tax year 2005 in the amount of $1,109. (A copy of Rodney Wooten's pay history is attached and labeled as Attachment "A".)    I did not receive any communication from either Rodney Wooten or his current wife, Tracy Wooten, contesting the tax offset until January 2007.

On January 2, 2007, I received a December 13, 2006, letter from Tracy Wooten requesting that her portion of the jointly file 2005 Alabama taxes that were intercepted be refunded back to her. (A copy of Tracy Wooten's letter is attached and labeled as Attachment "B".)    On January 4, 2007, I sent a letter was sent to Rodney Wooten instructing him of steps his spouse might take for the return of the tax refund. (A copy of the letter to Rodney Wooten is attached and labeled as Attachment "C".)    Almost six months had passed since the tax refund had been received and the thirty days in which the Tracy Wooten had to contest the state tax offset had expired. Rodney Wooten's pay history shows that the offset of the 2005 joint tax refund is the only tax offset received by DHR that was not refunded. (Attachment "A".)

On February 5, 2007, the Circuit Court of Montgomery County in Case Number DR 94-697 determined that there were no child support arrears owed by Rodney Wooten but that current child support of $541 per month was due. (A copy of the February 5,

2

2007, court order is attached and labeled as Attachment "D".)    On February 20, 2007, tax intercept was deleted on ALECS. On February 23, 2007, the Department of Revenue offset in the state tax refund in the amount $390.10. (A copy of the post-offset notice sent to Tracy Wooten is attached and labeled as Attachment "E".) ALECS did not release the money to the custodial parent. On March 29, 2007, Tracy Wooten sent a letter to the Montgomery County DHR requesting her portion of the joint tax refund from the 2006 AL taxes that was offset. (A copy of Tracy Wooten's letter is attached and labeled as Attachment "F".) On April 10, 2007, the entire $390 offset from the 2006 State tax refund was returned to the Wootens.

KE'ASHA HOWARD

Sworn to and subscribed before me on this the 11th day of March, 2008.

Notary Public, State at Large
My Commission Expires: 3/8/2010

03/11/08

# STATE OF ALABAMA
## CHILD SUPPORT ENFORCEMENT DIVISION
## COURT ORDER PAYMENT SUMMARY

NCP NAME: RODNEY B. WOOTEN
NCP ID: P000189526I

CP NAME: MARCIA CONNER
CP ID: P000090990

COURT ORDER NUMBER: 51DR94000697
DHR FILE NUMBER: 51-136825
CASE ID: 000000000595967

## SUPPORT TYPES AND TERMS

| | | CURRENT | ARREARS | BALANCES | INTEREST |
| --- | --- | --- | --- | --- | --- |
| CHILD SUPPORT | $541.00 | PER MONTH | PER | $541.00 | STATE |
| RETROACTIVE CHILD SUPPORT | | | PER | | CP |
| MEDICAL SUPPORT | | PER | PER | | |
| MEDICAL REIMBURSEMENT | | | PER | | |
| SPOUSAL SUPPORT | | PER | PER | | MEDICAID |
| FEES | | | PER | | |

EFFECTIVE DATE: December 1, 2006

BALANCES BY ACCOUNT TYPE:
CS NA AR        0.00

## TOTAL AMOUNT DUE FOR THIS COURT ORDER: $541.00

| DATE | PAYMENT RECEIVED TOTAL | ORDER | PAY CODE | ACCOUNT AMOUNT | POSTED TYPE | ACCOUNT AMOUNT | POSTED TYPE | ACCOUNT AMOUNT | POSTED TYPE | ACCOUNT AMOUNT | POSTED TYPE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 12/28/2008 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 1/30/2008 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 2/26/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 1/29/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 10/25/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 9/27/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 8/29/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 7/26/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 6/27/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 5/25/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 4/27/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 3/24/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 2/24/2007 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 1/27/2007 | 841.00 | 841.00 | RP | 691.00 | CS NA CU | 150.00 | CS NA AR | | | | |
| 2/27/2006 | 541.00 | 541.00 | RP | 541.00 | CS NA CU | | | | | | |
| 11/17/2006 | 691.00 | 691.00 | RP | 691.00 | CS NA CU | | | | | | |
| 10/28/2006 | 691.00 | 691.00 | RP | 691.00 | CS NA CU | | | | | | |
| 9/27/2006 | 691.00 | 691.00 | RP | 691.00 | CS NA CU | | | | | | |
| 8/12/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |

AF - Application Fee
FF - Involuntary Lump Sum Payment
GI - Gift
OS - Other State Income Withholding
SJ - State Joint

BC - Bankruptcy Court
FJ - Involuntary Lump Sum Payment
IF - Involuntary Lump Sum Payment
OT - Other State, State Offset Single
SS - State Single

BN - Bond
FM - Financial Management
IW - Income/Wage Withholding
RP - Regular Pay
TF - Trust Fund

CC - Court Cost Fee
FS - Involuntary Lump Sum Payment
LI - Lien
SA - State Adjustment
UC - Unemployment Compensation

FA - Involuntary Lump Sum Payment
GA - Garnishments
MA - Military Allotment
SE - State Single Fee

FE - Involuntary Lump Sum Payment
GF - Genetic Fee
OJ - Other State, State Offset Joint
SF - State Joint Fee

## ATTACHMENT A

**STATE OF ALABAMA**
**CHILD SUPPORT ENFORCEMENT DIVISION**
**COURT ORDER PAYMENT SUMMARY**

CP NAME: MARCIA CONNER
CP ID : P000090990

NCP NAME: RODNEY B. WOOTEN
NCP ID : P0001895261

03/11/08  Page: 2
COURT ORDER NUMBER:  51DR94000697
DHR FILE NUMBER:  51-136825
CASE ID:  0000000595967

| DATE | PAYMENT RECEIVED TOTAL | ORDER | PAY CODE | ACCOUNT AMOUNT | POSTED TYPE | ACCOUNT AMOUNT | POSTED TYPE | ACCOUNT AMOUNT | POSTED TYPE | ACCOUNT AMOUNT | POSTED TYPE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/31/2006 | 1,109.00 | 1,109.00 | SJ | 1,109.00 | CS NA AR | | | | | | |
| 07/31/2006 | 10.00 | 10.00 | SF | 10.00 | CS NA AR | | | | | | |
| 07/25/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 06/26/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 05/23/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 04/27/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 03/28/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 02/24/2006 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 01/11/2006 | 570.00 | 570.00 | RP | 285.00 | CS NA CU | 285.00 | CS NA AR | | | | |
| 11/30/2005 | 285.00 | 285.00 | RP | 285.00 | CS NA AR | | | | | | |
| 11/18/2005 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 09/23/2005 | 570.00 | 570.00 | RP | 285.00 | CS NA CU | 285.00 | CS NA AR | | | | |
| 07/15/2005 | 865.79 | 865.79 | RP | 285.00 | CS NA CU | 28.29 | CP INT | 552.50 | CS NA AR | | |
| 05/25/2005 | 300.00 | 300.00 | RP | 300.00 | CS NA AR | | | | | | |
| 05/01/2005 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 04/02/2005 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |
| 03/07/2005 | 287.50 | 287.50 | RP | 285.00 | CS NA CU | 2.50 | CS NA AR | | | | |
| 02/03/2005 | 285.00 | 285.00 | RP | 285.00 | CS NA CU | | | | | | |

Application Fee
Involuntary Lump Sum Payment
GCR
Other State Income Withholding
State Joint

BC - Bankruptcy Court
FJ - Involuntary Lump Sum Payment
IF - Involuntary Lump Sum Payment
OT - Other State, State Offset Single
SS - State Single

BN - Bond
FM - Financial Management
IW - Income/Wage Withholding
RP - Regular Pay
TF - Trust Fund

CC - Court Cost Fee
FS - Involuntary Lump Sum Payment
LI - Lien
SA - State Adjustment
UC - Unemployment Compensation

FA - Involuntary Lump Sum Payment
GA - Garnishments
MA - Military Allotment
SE - State Single Fee

FE - Involuntary Lump Sum Payment
GF - Genetic Fee
OU - Other State, State Offset Joint
SF - State Joint Fee

December 13, 2006

Montgomery County Dept of Human Resources
3030 Mobile Hwy
P.O. Box 250407
Montgomery, AL 36125-0407

To Whom It May Concern:

I am writing to request my portion of the jointly filed AL tax refund which was collected through the Tax Refund Offset Program. My spouse is Rodney Wooten who pays child support using ID # 1895261.

Please refund my portion immediately and send to:

Tracy Wooten

Sincerely,

*Tracy Wooten*

Tracy Wooten

**ATTACHMENT B**

STATE OF ALABAMA
DEPARTMENT OF HUMAN RESOURCES
CHILD SUPPORT ENFORCEMENT DIVISION
MONTGOMERY COUNTY OFFICE
P O BOX 250407
MONTGOMERY, AL  36125-0407
(334)293-3100

January 4, 2007

RODNEY B. WOOTEN



Dear MR. WOOTEN:

This letter is being sent to you in response to the letter received by this office concerning your

joint state taxes that were intercepted.  In order for your spouse MRS. Tracy Wooten, to recover

her portion of the taxes that were intercepted, she will need to contact the IRS and proceed with

the steps necessary to Claim Injured Spouse.  The State of Alabama also has steps that need to

be followed.  You will need to contact the Department of Revenue to determine what steps to take

to satisfy there requirements.  If either of you have any further questions and/ or concerns, please

contact me at the above address or my office number (334) 293-3202.

Sincerely,

Ke'asha A. Howard

KE'ASHA HOWARD
CHILD SUPPORT ENFORCEMENT

**ATTACHMENT C**

000024

FEB 07 2007

51-136825
57594 7

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
DOMESTIC RELATIONS DIVISION

STATE OF ALABAMA, ex rel.,                    *                    ZOE001
                                              *
MARCIA CONNER,                                *
                                              *         CASE NO: DR 94 697
    PETITIONER,                               *         DA NO: 1044
                                              *         DHR NO: 136825
V.                                            *
                                              *
RODNEY B WOOTEN,                              *
                                              *
    RESPONDENT.                               *

## ORDER

THIS CAUSE came for hearing on November 16, 2006, before the Court upon the

pleadings and upon the evidence presented, the recommendation of the Referee is as

follows:

By agreement of the parties:

1.    An interest judgment of $467 through October 31, 2006 is awarded to petitioner.

2.    A judgement of $3,286 for improper tax exemption use by the Petitioner is
      awarded to Defendant.

3.    An overpayment by the Defendant of $376 is credited to the Petitioner's $467
      interest judgment leaving $91 as still owed by Defendant to Petitioner. The $91
      owed by Defendant subtracted from $3,286 leaves a judgment to Defendant of
      $3,195 to be paid by petitioner. The $3,195 owed by petitioner is to be paid by a
      reduction in continuing child support by $150 per month for twenty-one (21)
      months .

THEREFORE, continuing child support is modified to $541 per month ($691-$150)

beginning December 1, 2006 through August 2008. September 2008 child support will

resume at $691 per month.

The Department of Human Resources is ordered to report to the Credit Bureau

that defendant is no longer in arrears.

**ATTACHMENT D**

DONE this the ___3___ day of _Janny_____, 20 0̲7̲.

(Order from 11/14/07)
(hearing submitted to
fferm this date).

_____
REFEREE

The findings and recommendations of the Referee, having been read and approved, are hereby and confirmed as the Order of this Court.

DONE this the ___5ᵗʰ___ day of _Feb ny_____, 20 0̲7̲.

_____
JUDGE

# STATE OF ALABAMA
# DEPARTMENT OF REVENUE

### Montgomery, Alabama 36132
(www.revenue.alabama.gov)

CYNTHIA UNDERWOOD
Assistant Commissioner

G. THOMAS SURTEES
Commissioner

FEBRUARY 23, 2007

LEWIS A. EASTERLY
Secretary

WOOTEN   RODNEY B & TRACY D

File: ▇▇▇▇▇▇
Year: 2006

Re:  WOOTEN, RODNEY (DEBTOR)
SS# ▇▇▇▇▇▇

Description of Debt: FAILURE TO MAKE COURT ORDERED CHILD SUPPORT PAYMENTS

Amount of Refund    $   2,567.00
Amount Owed         $     390.10
Balance of Refund   $   2,176.90

Claimant Agency: THE ALABAMA DEPARTMENT OF HUMAN RESOURCES
                 CHILD SUPPORT ENFORCEMENT DIVISION
                 50 RIPLEY STREET
                 MONTGOMERY, AL 36130
                 PHONE (334) 242-9300

------------------------------------------------------------------------

Act No. 81-696 passed in the Regular Session of the 1981 Legislature provides for the collection of debts owed to the State by setoff of such debt against income tax refunds.

The Alabama Department of Revenue has been notified that the above named debtor owes the debt described in this letter to the agency cited above. This notice is to inform you that your Alabama income tax refund has been captured and sent to the agency above to be applied against the debt owed; therefore, all questions and concerns are to be directed to that agency. Do not contact the Revenue Department. Please give written notice of your intention to contest the setoff within thirty days from the date of this letter to the above State agency which now has your refund check.

If you are married, filing a joint return and incurred this debt separately from your spouse who has no legal obligation to pay the debt, but was employed and received income and paid withholding and/or estimated tax payments, your spouse may be entitled to his/her share of the joint refund. Your spouse may receive his/her share of the joint refund by submitting to the agency above within thirty days from the date of this letter a clear legible copy of your Alabama Individual Income Tax Return Form 40 or 40A, all W-2 Forms and all other supporting documents that were required to be submitted to the Alabama Department of Revenue when your tax return was filed.

We have applied all or part of your Alabama income tax refund to the amount owed. The computation is shown above. If a balance of refund is indicated, it will be forwarded to you.

Individual Audit Section

**ATTACHMENT E**

March 29, 2007

Montgomery County Dept of Human Resources
3030 Mobile Hwy
P.O. Box 250407
Montgomery, AL 36125-0407

To Whom It May Concern:

I am writing to request my portion of the jointly filed 2006 AL tax refund which was
collected through the Tax Refund Offset Program.  My spouse is Rodney Wooten who
pays child support using ID # 1895261.

Please refund my portion immediately and send to:

Tracy Wooten

Sincerely,

*Tracy Wooten*

Tracy Wooten

**ATTACHMENT F**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TRACY WOOTEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:07-cv-701-WKM** |
| | ) | |
| **PAGE WALLEY, Commissioner** | ) | |
| **of the Alabama Department of** | ) | |
| **Human Resources, in his official** | ) | |
| **capacity,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### AFFIDAVIT

Before me, the undersigned authority, personally appeared **JANICE GRUBBS**, who is known to me and who, having been first duly sworn, deposes and states as follows:

"My name is Janice Grubbs. I am a resident of Chambers County, Alabama, am over the age of 19 years, and am competent to testify as to the matters contained in this affidavit.

"I am employed by the State of Alabama Department of Human Resources as a Policy Analyst with the Child Support Enforcement Division. I have been employed in the capacity of Policy Analyst for approximately ten years. I have been employed by the Department of Human Resources for more than thirty years.

The Tax Intercept Program (also called the Tax Offset Program) is the process of intercepting a noncustodial parent's federal and state income tax refunds for the purpose of satisfying child support arrearages. Tax offset is governed by federal and state statutes, rules and regulations which in turn govern the Department of Human Resources'

1

**EXHIBIT**

**2**

policy and procedures.   State income tax offset is mandated by 42 U.S.C. 666 (a)(3) and 45 C.F.R. 303.102 and governed by *Ala. Code 1975*, §40-18-100 et seq. and Alabama Administrative Code r 660-3-6-.01 though .10.   Federal income tax offset is mandated by 42 U.S.C.A. § 652 and 45 C.F.R. § 303.72 and is governed by 42 U.S.C.A. § 664. DHR's policy that governs income tax offset is located in Chapter 9.8 of the Child Support Enforcement Program's Policy and Procedures Manual.  (A copy of Chapter 9.8 is attached and labeled as Attachment "A".)     DHR has in place procedures for notification of tax offset and for a non-custodial parent or their spouse to contest the tax refund offset either prior to the tax offset or after the tax offset has occurred.

## PRE-OFFSET NOTICE

Federal law mandates that the offset of taxes be automated through DHR's child support case management computer system known as Alabama Location Enforcement Collection System (ALECS).   All cases that meet the criteria for submittal for tax refund offset are submitted by ALECS to the Alabama Department of Revenue for state tax offset and/or to the Federal Office of Child Support Enforcement for referral to the Federal Department of Treasury's Financial Management Service (FMS) for federal tax offset.   There are two notices that are sent to the non-custodial parent and their spouse when tax refunds are offset.  The first notice is a pre-offset notice that is generated by ALECS and sent by the State Child Support Enforcement Division to the qualifying non-custodial parent prior to offsetting the tax refund.  This pre-offset notice is designed to provide the non-custodial parent and their spouse with information about tax offset and how to avoid and/or contest the tax offset.   The pre-offset notice informs the non-custodial parent of the past due amount, that they have the right to contest DHR's

2

determination of the amount of past due child support or that past-due support is owed,
and that they have the right to an administrative review by contacting DHR within 30
days. (A copy of the pre-offset notice is attached and labeled as Attachment "B".) That
notice contains the telephone number and address of the county DHR office responsible
for conducting the review.

Neither DHR nor the taxing authority know prior to a tax return being filed
whether or not the non-custodial parent will file a return individually or jointly with a
spouse. Therefore, DHR includes in every pre-offset notice information for the spouse of
a non-custodial parent about how to contest the tax refund offset in the event of a jointly
filed tax return. The pre-offset notice (Attachment "B") provides:

> If you are married, filing a joint income tax return and your spouse had no
> legal responsibility for the support debt that you incurred separately, your
> current spouse may be entitled to receive his or her portion of the joint
> refund. For this provision to apply, your spouse must have a taxable
> income included in the return, income taxes withheld and/or made
> estimated tax payments.
> If your spouse meets the criteria above, he or she should take the
> following actions to receive his or her portion of the joint refund:
> 1.    Federal (IRS) Joint Refund – File a Form 8379, Injured Spouse
> Claim and Allocation. Form 8379 should be attached to the top of the
> Form 1040 or 1040A when you file your tax return with the IRS, or be
> filed according to the other instructions as indicated on the Form 8379.
> 2.    State Joint Refund – (a) File separate returns, or (b) after the
> refund has been collected, your spouse should contact the county or state
> office identified above.

### POST-OFFSET NOTICE

Once DHR certifies a non-custodial parent's name for the Tax Offset Program, the
Alabama Department of Revenue or the Federal Department of Treasury's Financial
Management Service will freeze the non-custodial parent's tax refund and send the
intercepted money to DHR. Concurrent with the tax refund offset, the second notice of

the tax offset is sent by either the Alabama Department of Revenue, in the case of a state refund, or the Federal Department of Treasury's Financial Management Service if the refund is a result of a federal income tax return.

Per *Ala. Code 1975*, §40-18-103(c) the post-offset notice sent by the Alabama Department of Revenue is to contain an explanation of the type of debt, the amount of the debt, notice that the refund, up to the debt amount, has been sent to DHR and notice regarding the taxpayer's right to appeal the intercept within thirty days from the date of the post-offset notice. This notice contains the address and telephone number of State Child Support Enforcement personnel trained specifically to handle tax offset. (A copy of the state post-offset notice sent by the Alabama Department of Revenue is attached and labeled as Attachment "C".)

If the non-custodial parent and current spouse filed a state joint tax return, *Ala. Code 1975*, §40-18-103(c) requires that the spouse's name also appear on the post-offset notice. The post-offset notice informs the spouse of a non-custodial parent how to contest the state tax refund offset in the event of a jointly filed tax return. The post-offset notice (Attachment "C") provides:

> If you are married, filing a joint return and incurred this debt separately from your spouse who has no legal obligation to pay the debt, but was employed and received income and paid withholding and/or estimated tax payments, your spouse may be entitled to his/her share of the joint refund. Your spouse may receive his/her share of the joint refund by submitting to the agency above within thirty days from the date of this letter a clear legible copy of your Alabama Individual Income Tax Return Form 40 or 40A, all W-2 Forms and all other supporting documents that were required to be submitted to the Alabama Department of Revenue when your tax return was filed.

## PROCEDURE TO CONTEST TAX OFFSET

Chapter 9.8 of the Child Support Policy and Procedures Manual addresses the procedures to contest an income tax offset. If the non-custodial parent and his/her spouse file a joint state or federal tax return and the resulting refund is intercepted, DHR will hold the money in escrow to allow the spouse time to claim their portion of the refund. Pre-tax offset and post tax offset contest procedures are available.

## PRE-TAX OFFSET CONTEST

In addition to Chapter 9.8 of the Child Support Policy and Procedures Manual, pre-tax offset contest procedures are also addressed in the Alabama Administrative Code at r. 660-3-6-.08. (A copy of r. 660-3-6-.08 is attached and labeled as Attachment "D".) After receiving the pre-offset notice, and prior to the tax refund being offset, the non-custodial parent or their spouse may contest the federal or state tax offset either by writing to the local county DHR office or by orally requesting a review. Upon receiving the contest, the caseworker reviews the child support arrearage to determine if the amount is correct. If the issue cannot be resolved by the caseworker the case is forwarded to the supervisor for review. If the issue still cannot be resolved, the non-custodial parent or their spouse is instructed to request an administrative hearing as provided for under Alabama Administrative Code 660-1-5.

## POST TAX OFFSET CONTEST

In addition to Chapter 9.8 of the Child Support Policy and Procedures Manual, state post-tax offset contest procedures are also addressed at *Ala. Code 1975*, §40-18-103. When the non-custodial parent's spouse asks DHR to refund his/her portion after the state tax offset has occurred, the Alabama Department of Revenue is not responsible for

5

determining the spouse's portion or returning it to him/her. DHR instructs the non-custodial parent and spouse to provide copies of their state tax return and their W-2s. Upon receiving the documents, DHR determines the spouse's percentage of the total gross income of both taxpayers. DHR then multiplies that percentage with the state refund amount to determine the spouse's portion of the state refund and refunds that amount to the spouse. If the non-custodial parent or their spouse fails to submit his/her written hearing request to contest within the 30-day period, Ala. Code 1975 § 40-18-103(c) provides (s)he will have waived their opportunity to contest the setoff.

When a joint federal income tax refund has been offset, the non-custodial parent's spouse may file a Form 8379, Injured Spouse Claim and Allocation. Form 8379 should be attached to the top of the Form 1040 or 1040A when filing the tax return with the IRS, or be filed according to the other instructions as indicated on the Form 8379.

In either federal or state income tax offset, ALECS will automatically identify the offset amount that can be retained and applied to the non-custodial parent's debt(s). If the non-custodial parent's arrears balance is reduced to zero after being certified for tax offset or if there is any money remaining from the refund after the arrears are paid, the excess money is returned to the non-custodial parent.

*Janice Grubbs*

**JANICE GRUBBS**

Sworn to and subscribed before me on this the 11th day of *March* 2008.

*Dav M. Grote*

Notary Public, State at Large

My Commission Expires: 9/8/08

## TABLE OF CONTENTS

**9.8    INTERCEPTS** .................................................................................................................**43**

   **9.8.1    INTRODUCTION**.................................................................................................. **43**

   **9.8.2    LEGAL BASIS** ..................................................................................................... **43**

      9.8.2.a    State Code ................................................................................. 43

      9.8.2.b    Federal Regulations .................................................................. 43

   **9.8.3    FEDERAL INCOME TAX REFUND INTERCEPTS**............................................. **43**

      9.8.3.a    Criteria for Submittal ................................................................ 44

      9.8.3.b    Federal Tax Offset Certification ............................................... 45

      9.8.3.c    Pre-Offset Notices .................................................................... 45

      9.8.3.d    The NCP Contests the Offset (Prior to the Offset)................... 46

      9.8.3.e    The NCP Contests the Offset (Subsequent to the Offset) ....... 47

      9.8.3.f    Distribution of Amounts Collected ............................................ 47

      9.8.3.g    Joint Returns ............................................................................ 48

      9.8.3.h    Adjustments and Corrections ................................................... 49

      9.8.3.i    Address Information .................................................................. 49

   **9.8.4    ALABAMA STATE INCOME TAX REFUND INTERCEPTS** ............................... **49**

      9.8.4.a    Criteria for Submittal ................................................................ 50

      9.8.4.b    Submission of Cases For Intercept ......................................... 51

      9.8.4.c    Updates to Case Submissions ................................................. 51

      9.8.4.d    Pre-Offset Notice ..................................................................... 51

      9.8.4.e    The NCP Contests the Proposed Offset (Prior to the Offset) ... 51

      9.8.4.f    The NCP Contests the Offset (Subsequent to the Offset) ....... 52

      9.8.4.g    Distribution of Amounts Collected ............................................ 53

      9.8.4.h    Joint Returns ............................................................................ 53

# Attachment   A

## 9.8    INTERCEPTS

### 9.8.1   INTRODUCTION

A. The Tax Intercept Program (also called the Tax Offset Program) is the process of intercepting a noncustodial parent's (NCP's) Federal and State tax refunds for the purpose of satisfying child support arrearages.  Another type of intercept, the Unemployment Compensation (UC) intercept, is the process of intercepting a portion of an NCP's UC benefits.  The Administrative Offset Program is a third type of intercept which allows the offset of certain Federal payments in order to assist in the collection of past-due child support obligations.  An additional child support enforcement remedy is the Federal Passport Denial, Revocation or Restriction Program.

B. The Alabama Location Enforcement Collection System (ALECS) helps to manage the intercept processes through automated computer tape matches with the Federal Department of Treasury's Financial Management Service (FMS), the State Department of Revenue (DOR), the Federal Office of Child Support Enforcement (OCSE), and the Department of Industrial Relations (DIR).

### 9.8.2   LEGAL BASIS

#### 9.8.2.a    State Code

Code of Alabama 1975,  §40-18-100 through §40-18-109 provide for the collection of debts owed the State by State income tax refund offsets.  Unemployment Compensation intercepts are governed by Code of Alabama 1975, §25-4-152 and §30-3-60 through §30-3-71.

#### 9.8.2.b    Federal Regulations

States must have procedures for intercepting unemployment compensation per 45 CFR 302.65. The criteria and procedures for Federal income tax intercepts are covered by 45 CFR 303.72. Procedures for State tax intercepts are specified in 45 CFR 303.102.  The Debt Collection Improvement Act of 1996, Public Law 104-134, allows for the administrative offset of certain federal payments.   Section 370 of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996, Public Law 104-193, requires all states to enact procedures for the denial of passports.

### 9.8.3   FEDERAL INCOME TAX REFUND INTERCEPTS

Through the Federal Tax Offset Program, delinquent NCPs' Federal tax refunds are intercepted and applied to their child support debts.  All cases that meet the criteria for submittal must be certified for Federal tax offset.  The custodial parent (CP) cannot dictate whether his/her case is certified for intercept.

### 9.8.3.a    Criteria for Submittal

A. For a case to qualify for submittal to the FMS for the Federal Offset Program, it must meet the following criteria:

1.  There must be a court order for support or an administrative order of another State and a copy of the order, plus all modifications must be contained within the case record.

2.  Arrearages plus interest for each order must be at least:

    a)  $150 for a TANF or IV-E Foster Care Maintenance Payment (FCMP) case and must equal at least three months' support obligation; or

    b)  $500 for a non-TANF, Medicaid-Only or Aid to Children in Foster Care (TANF) case.

3.  The arrearage must be for child support owed for a qualified child, or for child support and spousal support for the parent with whom the child lives.

4.  On a non-TANF debt, the child must be a minor child under the age of majority in order to be certified.

5.  The NCP's name, SSN, and the arrearage amount must be verified.

6.  The case record must contain a copy of the payment record, or if there was a non-IV-D period, the CP's affidavit specifying payments not made by the NCP.

7.  The State certifying the case must be:

    a)  The State with the TANF assignment on TANF cases; or

    b)  The State where the CP lives or is receiving non-TANF services.

B. At the time the CP applies for non-TANF child support services, the Application for Services (PSD-BCS-570) informs him/her of the criteria for the Federal Tax Offset Program. Additionally, the applicant is informed that:

1.  A $10 certification fee will be deducted from any money collected by the intercept on behalf of a CP, unless the case is Medicaid-Only or was formerly a TANF or Medicaid-Only case (only collected once from either the Federal or State intercept--not from both).

2.  There is no guarantee that the offset will net any money.

3.  Any money collected through the offset may be held for up to six months if the NCP's Federal tax return was filed jointly with a spouse.

4.  If the support order is from a State other than Alabama, (s)he must provide the Department of Human Resources (DHR) Child Support Unit (CSU) with a copy of the order and any modifications, and a copy of the payment record or an affidavit specifying payments the NCP failed to pay.

5.  Any money collected as a result of the offset will first be applied to assigned arrearages owed by the NCP.

6.  (S)he is personally liable for repayment of any money collected erroneously, including repayment if the NCP's current spouse files an amended return.

7.  (S)he must inform the CSU of any address changes.

C.  Note that each case is certified based on individual court orders. Each court order must meet the certification criteria to be certified with the federal government. For example: an NCP has two non-TANF cases and two active court orders. In Case A, the NCP owes a total of $400 and in Case B, the NCP owes $1,000. Only the court order in Case B should be certified. When money is received, it will be applied only to the certified case.

### 9.8.3.b    Federal Tax Offset Certification

A.  ALECS scans the entire database for cases that meet the criteria for tax offset certification and produces a tape of those cases. Child Support Enforcement (CSE) staff forwards the tape to OCSE who forwards it to the Federal Department of Treasury's Financial Management Service (FMS). The FMS returns a tape with a list of cases that were rejected. Incorrect information on rejected cases must be corrected in order for certification for intercept to take place.

B.  In addition to generating the tape to be submitted to the FMS, ALECS also generates the following reports:

1.  Missing SSN Report: a list of cases that were not certified because the NCP's Social Security Number (SSN) was missing.

2.  Missing Name Report: a list of cases that were not certified because a party's name was missing.

3.  Tax Intercept Submissions: a list of cases included on the tape to be submitted to the FMS.

4.  FMS Certified Cases-Only Report: a list of all cases certified to FMS by county.

C.  CSE sends the computer tape to OCSE. OCSE forwards the tape to the FMS after pre-offset notices are sent to all the NCPs listed on the tape.

### 9.8.3.c    Pre-Offset Notices

A.  Before the NCP's name and case are submitted to the FMS for certification, (s)he must be sent a pre-offset notice informing him/her of:

1.  The amount of support that is past-due.

2.  The right to appeal the determination that support is past-due or to appeal the amount that is past-due.

3.  The right to an administrative review by the submitting State, or at his/her request, by the State of the order.

4.  The address and phone number of the local CSU handling the case and the procedures and timeframe for contacting the IV-D agency to appeal the offset.

B.  The pre-offset notices may be sent by either CSE or OCSE, at CSE's choice.  Currently, CSE generates the notices through ALECS and mails them to the NCP.  The pre-offset notice is sent only one time to the NCP.  If the NCP pays his/her debt to a zero balance and then accrues other certifiable amounts, he will receive another notice of certification.

C.  Note that the NCP cannot prevent his/her case from being certified for tax offset by paying all arrearage due once the pre-offset notice has been generated.  Money will be refunded to the NCP if no debt is due at the time it is received.

### 9.8.3.d    The NCP Contests the Offset (Prior to the Offset)

A.  After receiving the pre-offset notice, the NCP may contest the offset, either by writing to the local CSU or by orally requesting a review.  Upon receiving the NCP's oral or written request for a review:

1.  Access the EVM screen to record the request and subsequent actions.

2.  Review the arrearage to determine if it is correct.

3.  If the issue cannot be resolved, forward the case to the supervisor for review.

4.  If the issue still cannot be resolved, instruct the NCP to request a hearing.  For information on the hearing, see **Chapter 14 ADMINISTRATIVE HEARINGS AND JUDICIAL APPEALS**.

B.  An amount is legitimately in dispute if the NCP presents evidence showing that (s)he made payments during a time period for which (s)he is alleged to have failed to pay as ordered.  The evidence may include:

1.  Canceled checks.
2.  Copies of money orders.
3.  Court orders.
4.  Other evidence that payments have been made for a time period.

C.  When the NCP requests that his case be reviewed, the CSW should not place a hold on any account as this prevents all money from being distributed.  At this point in the process, the suppression code on the FSS screen does not need to be entered.  The appeal code is entered only after a written request is received for an administrative hearing.

#### 9.8.3.e     The NCP Contests the Offset (Subsequent to the Offset)

A. The FMS notifies the NCP when an intercept has taken place.  The NCP has 30 days to file an appeal (request a hearing).  The request for a hearing must be in writing and may be sent to either the local CSU or CSE Central Office.  If the NCP fails to submit his/her written hearing request within the 30-day period, (s)he cannot contest the offset.  For information on the hearing, see **Chapter 14  ADMINISTRATIVE HEARINGS AND JUDICIAL APPEALS**.

B. If the hearing officer determines that the arrearage amount certified to the FMS was incorrect, then within five days of receiving the hearing decision, the CSW must:

   1. Access the EVM screen and record the circumstances regarding the disputed amount.

   2. Modify the arrearage amount certified for Federal tax offset.

   3. If the hearing officer determines that the offset should not be done, suppress the tax offset on the FSS screen.

C. ALECS will automatically identify the offset amount that can be retained and applied to the NCP's debt(s).  If the offset amount exceeds the amount determined in the hearing decision, ALECS will automatically refund the difference to the NCP.

#### 9.8.3.f     Distribution of Amounts Collected

A. The FMS remits the intercepted money to Alabama by electronic funds transfer (EFT). Additionally, the FMS sends a computer tape specifying the cases on which collection was made and how much money was collected on each case.  The information from that tape is loaded into ALECS.   ALECS distributes the money in accordance with the Federal regulation:

   1. To certified TANF debts.

   2. To certified non-TANF debts.

   3. If there is any money remaining, ALECS automatically returns the excess to the NCP.

B. Additionally, ALECS generates the following reports:

   1. The Monthly Collections Report that lists the amount of certified arrearage, the amount collected, the amount adjusted (see **Section 9.8.3.h  Adjustments and Corrections**) and the net payment.

   2. The Address Information Report that shows the FMS reported address for the NCP.

   3. The Name Change Report that shows the ALECS participant name and the FMS reported  name when they are different.

C. If the NCP owes arrearages on multiple cases of the same type (TANF or non-TANF), and the intercepted amount is less than the amount certified, each case will receive a portion of the intercepted refund proportionate to the arrearage owed. For example, if the NCP owes $400 on one case and $600 on another case and the refund amount was $500, the first case would receive $200 and the second case would receive $300. Keep in mind, TANF arrearages are always satisfied first. If non-TANF arrearages were owed on the first case and TANF arrearages were owed on the second case, the first case would get nothing, and the second case would get the entire intercept.

D. The current certified file can be modified upward or downward as the arrears change. New cases are added on a continuing basis using the file specifications for updates and modifications. The only requirement is that the State must issue a pre-offset notice for all new cases. A new case is one that has not been previously submitted to the offset program or a case that was deleted because the debt was satisfied but subsequent arrears accrued and the debt is being certified for offset again.

E. If more than one State submits an NCP's SSN for the offset program, the State that submits it first gets priority. If other States subsequently submit the NCP's SSN, their cases' priorities will be assessed based on the arrearage amounts the NCP owes (from highest to lowest). Of course, TANF arrearages are met first. If the first arrearages submitted are non-TANF and subsequent arrearages are TANF, the TANF arrearages will take priority.

### 9.8.3.g    Joint Returns

A. Sometimes the NCP files a joint return with his/her current spouse and the resulting refund is intercepted to offset the NCP's child support debt. When this occurs, the NCP's spouse (often called the injured spouse) has six years to file an amended return with the IRS to get his/her portion of the refund.

B. The IRS encourages spouses to file the amended return as soon as possible after the intercept occurs, and most spouses do. For this reason, if a joint refund is intercepted on a non-TANF case the money will be escrowed for six months before it is released to the CP. By holding the money for six months on non-TANF cases, CSE avoids most situations where the CP is required to pay back money because an amended return was filed.

C. The NCP and his/her spouse may request that the six-month escrow period be waived because they want the entire refund, including the spouse's portion, applied to the child support debt. If the NCP and/or his/her spouse make such a request:

1. Send the Federal Joint Income Tax Release Form to the NCP and his/her spouse to obtain their signatures.

2. Access the EVM screen to record the request and subsequent actions.

3. When the completed Release is received, forward it to CSE Tax Offset for appropriate adjustments to be made.

9.8.3.h    **Adjustments and Corrections**

A. After the FMS remits collections on a case, those collections may be adjusted (usually decreased).  Adjustments are most frequently made when:

   1. A joint return was intercepted and the NCP's spouse filed an amended return to receive his/her portion of the refund.

   2. The NCP filed an amended return to correct his/her original return.

   3. The wrong person was certified.

B. The FMS reports adjustments to collections on the same tape on which it reports collections (see **Section 9.8.3.f    Distribution of Amounts Collected**) and adds or deducts the adjustments to the money electronically transferred.  ALECS reports the adjustments on the Monthly Collections Report.

C. If the money was erroneously intercepted or decreased by an amended return and was disbursed to the CP, (s)he must pay it back to DHR.  The CSU will work out a six-month payment plan with the CP, if necessary.  When the CP must repay the money:

   1. Access the DOC screen to generate the Repayment Letter/Agreement - Client (ALECS112).

   2. Send the ALECS112 to the CP.

   3. Access the ACC screen to set up a repayment account after the CP completes and returns the ALECS112.

9.8.3.i    **Address Information**

The address update from the tax process is displayed on the FTO screen.  The address received from the FMS is on the right side of the screen.  The CSW will receive a tickler stating "New address may be on the FTO screen."  The CSW would then go to the FTO screen through the LIR screen.  When the address has been verified the CSW has the option of selecting the address from FTO to update the participant's mailing or home address on PAR.  F8 and F7 can be used to page between the Federal and State address indicated by the address source.

9.8.4    **ALABAMA STATE INCOME TAX REFUND INTERCEPTS**

Through the State Tax Offset Program, delinquent NCPs' State tax refunds are intercepted and applied to their child support debts.  As with the Federal Tax Offset Program, all cases that meet the criteria for submittal must be certified for State tax offset.  This includes all incoming interstate cases that meet the criteria.  The custodial parent (CP) cannot dictate whether his/her case is certified for intercept.

9.8.4.a     **Criteria for Submittal**

A.  For a case to qualify for submittal to DOR for the State Tax Offset Program, it must meet the following criteria:

1.  There must be a court order for support or an administrative order of another State and a copy of the order plus all modifications must be contained within the case record.

2.  Arrearages and/or interest must be at least $500 regardless of the case type (TANF, non TANF, etc.).

3.  Arrearage must be equal to three months support.

4.  The arrearage must be for child support owed for a qualified child or for child support and spousal support for the parent with whom the child lives.

5.  The NCP's name, SSN, and the arrearage amount must be verified.

6.  The case record must contain a copy of the payment record, or if there was a non-IV-D period, the CP's affidavit specifying payments not made by the NCP.

B.  At the time the CP applies for child support services, the Application for Services (PSD-BCS-570) informs him/her of the criteria for the State Tax Offset Program.  Additionally, the applicant is informed that:

1.  A $10 certification fee will be deducted from any money collected by the intercept on behalf of a CP, unless the case is Medicaid-Only or was formerly a TANF or Medicaid-Only case (only collected once from either the Federal or State intercept--not from both).

2.  There is no guarantee that the offset will net any money.

3.  If the support order is from a State other than Alabama, the CSU must have a copy of the order and any modifications and a copy of the payment record or the CP's affidavit specifying payments the NCP failed to pay.

4.  Any money collected as a result of the offset will first be applied to assigned arrearages owed by the NCP.

5.  (S)he is personally liable for repaying erroneously paid amounts.

6.  (S)he must inform the CSU of any address changes.

C.  Note that each case is certified based on individual court orders.  Each court order must meet the certification criteria to be certified with the state government.  For example:  an NCP has two cases and two active court orders.  In Case A, the NCP owes a total of $400 and in Case B, the NCP owes $1,000.  Only the court order in Case B should be certified.

### 9.8.4.b    Submission of Cases For Intercept

DHR submits cases for State tax on an ongoing basis as certification criteria occurs.  Cases that meet submission criteria for State tax intercept will be listed on a computer tape and sent to the DOR.

### 9.8.4.c    Updates to Case Submissions

CSE will send electronic updates to DOR on a weekly basis.  Therefore, if there are increases or decreases in the balance or deletions, this will be reported to DOR.

### 9.8.4.d    Pre-Offset Notice

A. CSE gives the NCP notice of the intent to submit his/her name for the State Tax Offset Program in the same pre-offset notice that is sent to the NCP regarding the Federal Tax Offset Program.  The notice provides the NCP with information regarding:

1. The amount of support that is past-due.

2. The right to appeal the determination that support is past-due or to appeal the amount that is past-due.

3. The right to an administrative review.

4. The address and phone number of the CSU office handling the case and procedures and timeframe for contacting the IV-D agency to appeal the offset.

### 9.8.4.e    The NCP Contests the Proposed Offset (Prior to the Offset)

A. After receiving the pre-offset notice, the NCP may contest the offset, either by writing to the local CSU or by orally requesting a review.  Upon receiving the NCP's oral or written request for a review:

1. Access the EVM screen to record the request and subsequent actions.

2. Review the arrearage to determine if there is an amount legitimately in dispute.

3. If the issue cannot be resolved, forward the case to the supervisor for review.

4. If the issue still cannot be resolved, instruct the NCP to request a hearing.  For information on the hearing, see **Chapter 14 ADMINISTRATIVE HEARINGS AND JUDICIAL APPEALS**.

B.  An amount is legitimately in dispute if the NCP presents evidence showing that (s)he made payments during a time period for which (s)he is alleged to have failed to pay as ordered. The evidence may include:

   1.  Canceled checks.

   2.  Copies of money orders.

   3.  Court orders.

   4.  Other evidence that payments have been made for a time period.

C.  Again, when an NCP requests that his case be reviewed, the CSW **should not** place a hold on any account as this prevents all money from being distributed.  At this point in the process, the suppression code on the FSS screen also does not need to be entered.  This code is entered only after a written request is received for an administrative hearing.

## 9.8.4.f    The NCP Contests the Offset (Subsequent to the Offset)

A.  If CSE certifies an NCP's name for the State Tax Offset Program, DOR will:

   1.  Freeze the NCP's refund, if it is at least $25.00.

   2.  Send the intercepted money to DHR.

   3.  Notify the NCP of the offset.

B.  The notice contains the following information:

   1.  The taxpayer's name.

   2.  An explanation of the debt (child support arrearage).

   3.  The amount of the debt.

   4.  Notice that the refund, up to the debt amount, has been sent to DHR.

   5.  Notice regarding the taxpayer's right to appeal the intercept and instructions for writing to the local CSU for a review or hearing.

C.  Additionally, if the NCP and current spouse filed a joint tax return, the spouse's name will appear on the notice with a statement that (s)he may be entitled to a refund.

D.  The NCP has 30 days to request a hearing.  The request for a hearing must be in writing and may be sent to either the local CSU or CSE Central Office.  If the NCP fails to submit his/her written hearing request within the 30-day period, (s)he cannot contest the offset.  For information on the hearing, see **Chapter 14   ADMINISTRATIVE HEARINGS AND JUDICIAL APPEALS**.

E.  If the hearing officer determines the arrearage amount certified to DOR was incorrect, then within five days of receiving the hearing decision:

   1.  Access the EVM screen and record the circumstances regarding the disputed amount.

   2.  Modify the arrearage amount certified for State tax offset.

F.  ALECS will automatically identify the offset amount that can be retained and applied to the NCP's debt(s).  If the offset amount exceeds the amount determined in the hearing decision, ALECS will send a tickler to the child support worker (CSW) prompting a refund to the NCP.

### 9.8.4.g     Distribution of Amounts Collected

A.  ALECS distributes the money received from a State tax offset in the following manner:

   1.  To current support.

   2.  To certified non-TANF debts.

   3.  To certified TANF debts.

   4.  If there is any money remaining, the excess money is returned to the NCP.

B.  If the NCP owes arrearages on multiple cases of the same type (TANF or non-TANF), each case will receive a portion of the intercepted refund proportionate to the arrearage owed.  For example, if the NCP has two TANF cases and owes $400 on one case and $600 on another case and the refund amount was $500, the first case would receive $200 and the second case would receive $300.  Keep in mind that in State tax offsets, the intercepted refund can be applied to current support.  Unlike Federal tax offsets, State tax offset money is applied to non-TANF accounts first.  If the offset amount is greater than the certified arrearage, ALECS prompts the CSW to return the excess to the NCP.

### 9.8.4.h     Joint Returns

A.  If the NCP and his/her spouse file a joint State tax return and the resulting refund is intercepted, CSE will hold the money in escrow for one month.  The spouse may request that CSE refund his/her portion of the refund.  DOR is not responsible for determining the spouse's portion or returning it to him/her.

B.  When the NCP's spouse asks CSE to refund his/her portion, CSE:

   1.  Instructs the NCP and spouse to provide copies of their tax return and their W-2s.

   2.  Upon receiving the documents, determines the spouse's percentage of the total gross income of both taxpayers.

   3.  Multiplies that percentage with the refund amount to determine the spouse's portion of the refund.

   4.  Refunds that amount to the spouse.

**9.8.9    LEGAL REFERENCES**

Code of Alabama 1975, §40-18-100 through §40-18-109.
Code of Alabama 1975,  §25-4-152
Code of Alabama 1975,  §30-3-60 through §30-3-71
45 CFR 303.72
45 CFR 302.65
45 CFR 303.102
26 USC 6103(1)(10)
26 USC 6103(p)(4)

**9.8.10    DOCUMENT REFERENCES**

Application for Services (PSD-BCS-570)
Federal Joint Income Tax Release Form
Notice of Excess Tax Offset Funds Received (ALECS 080)
Adjustment Request
Repayment Letter/Agreement - Client (ALECS 112)
IRS Publication 1075 "Tax Information Security Guidelines for Federal, State, and Local Agencies
Agreement to Withhold Unemployment Compensation (CSD-1543)
Authorization for Department of Industrial Relations to Withhold Unemployment Compensation (CSD-1544)

**9.8.11    SCREEN REFERENCES**

Review Balance
        DBS, DBD
Suppression
        FSS

**000002**

TAX REFUND OFFSET PROGRAM                    CONTACT:
STATE OF ALABAMA                             ADDRESS:
DEPARTMENT OF HUMAN RESOURCES
CHILD SUPPORT ENFORCEMENT DIVISION
50 RIPLEY STREET
MONTGOMERY, AL 36130                         PHONE:

The State of Alabama has determined that you owe past due child and/or spousal support. Our records show that you owe at least the amount shown on the last page of this notice. If this amount is not paid in full within 30 days from the date of this notice, it will be referred to the United States Department of the Treasury for collection by Administrative Offset and Federal Tax Refund Offset and the State of Alabama Department of Revenue for State Income Tax Refund Offset. Under Administrative Offset (31 U.S.C. SEC 3716), certain federal payments which might otherwise be paid to you will be intercepted, either in whole or in part, to pay past due child support and/or spousal support. Under Federal Tax Refund Offset (42 U.S.C. SEC 664; 26U.S.C. SEC 6402) any federal income tax refund to which you are entitled will be intercepted to satisfy your debt. Under State Income Tax Refund Offset (45 CFR 303.102; Code of Alabama 1975, section 26-17-15 and 38-10-7) overdue support can be collected by intercepting your State income tax refund.

**Your past due child and/or spousal support debt will be referred for collection from your administrative and/or tax refunds even though you may be paying on the past debt according to the terms of a court order. In addition, the amount of your past due support will be reported to consumer reporting agencies (credit bureaus).**

Effective October 1, 2006, if you owe arrearages of child support in an amount exceeding $2500, as certified by the agency above, the Secretary of State will refuse to issue a passport to you, and may revoke, restrict or limit a passport which was previously issued [42 USC 654(31)].

If you have previously been notified that your debt was being referred to the Internal Revenue Service (IRS) and the Alabama State Department of Revenue for collection, this notice is to inform you that if your debt is not paid in full within 30 days from the date of this notice, it will also be subject to collection by Administrative Offset. Your debt will remain subject to collection by Administrative Offset, Federal Tax Refund Offset and/or State Income Tax Refund Offset until it is paid in full. This means that State and Federal tax refunds and certain other Federal payments due to you now or in the future will be offset without further prior notice.

You have a right to contest our determination that this amount of past due support is owed. You may request an administrative review by contacting us within 30 days at the address or phone number listed in the top right corner of this page. If your support order was not issued in our state, we can conduct the review; or, if you would prefer that an administrative review be conducted in the state that issued the order, we will contact the state within 10 days after we receive your request. You will be notified of the time and place of your administrative review by the state that issued the order. All requests for administrative reviews must be in writing to the county identified in the top right corner of this notice.

**RAPID REFUND – When your child and/or spousal support debt has been certified to IRS for Tax Offset, you are not eligible for Rapid Refund. If you file for a rapid refund of your tax refund, you will lose your filing fee.**

If you are married, filing a joint income tax return and your spouse had no legal responsibility for the support debt that you incurred separately, your current spouse may be entitled to receive his or her portion of the joint refund. For this provision to apply, your spouse must have had taxable income included in the return, income taxes withheld and/or made estimated tax payments.

If your spouse meets the criteria above, he or she should take the following actions to receive his or her portion of the joint refund:

1. Federal (IRS) Joint Refund - File a Form 8379, Injured Spouse Claim and Allocation. Form 8379 should be attached to the top of the Form 1040 or 1040A when you file your tax return with the IRS, or be filed according to other instructions as indicated on the Form 8379.

2. State Joint Refund - (a) File separate returns, or (b) after the refund has been collected, your spouse should contact the county or state office identified above.

IMPORTANT: If you owe current support and fail to pay your obligation in full and on time, any arrears accruing due to payments missed after the date of this notice may be added to your debt and will be subject to collection by Administrative Offset, Federal Tax Refund Offset and State Income Tax Refund Offset without further notice. To determine additional amounts owed after the date of this notice, or to determine the total amount past due which we have submitted for collection, you may contact us at the address or phone number listed in the top right corner of this notice.

If the amount that is certified to United States Department of the Treasury and/or Alabama State Revenue is less than the amount past due, you are still responsible for payment of the total amount due.

**ATTACHMENT B**

# STATE OF ALABAMA
# DEPARTMENT OF REVENUE

000003

Montgomery, Alabama 36132
(www.revenue.alabama.gov)

G. THOMAS SURTEES
Commissioner

CYNTHIA UNDERWOOD
Assistant Commissioner

LEWIS A. EASTERLY
Secretary

FEBRUARY 23, 2007

WOOTEN   RODNEY B & TRACY D

File: ▮▮▮▮▮▮
Year: 2006

Re:  WOOTEN, RODNEY (DEBTOR)

Description of Debt: FAILURE TO MAKE COURT ORDERED CHILD SUPPORT PAYMENTS

Amount of Refund    $  2,567.00
Amount Owed         $    390.10
Balance of Refund   $  2,176.90

Claimant Agency: THE ALABAMA DEPARTMENT OF HUMAN RESOURCES
                 CHILD SUPPORT ENFORCEMENT DIVISION
                 50 RIPLEY STREET
                 MONTGOMERY, AL 36130
                 PHONE (334) 242-9300

Act No. 81-696 passed in the Regular Session of the 1981 Legislature provides
for the collection of debts owed to the State by setoff of such debt against
income tax refunds.

The Alabama Department of Revenue has been notified that the above named
debtor owes the debt described in this letter to the agency cited above. This
notice is to inform you that your Alabama income tax refund has been captured
and sent to the agency above to be applied against the debt owed; therefore,
all questions and concerns are to be directed to that agency. Do not contact
the Revenue Department. Please give written notice of your intention to
contest the setoff within thirty days from the date of this letter to the
above State agency which now has your refund check.

If you are married, filing a joint return and incurred this debt separately
from your spouse who has no legal obligation to pay the debt, but was employed
and received income and paid withholding and/or estimated tax payments, your
spouse may be entitled to his/her share of the joint refund. Your spouse may
receive his/her share of the joint refund by submitting to the agency above
within thirty days from the date of this letter a clear legible copy of your
Alabama Individual Income Tax Return Form 40 or 40A, all W-2 Forms and all
other supporting documents that were required to be submitted to the Alabama
Department of Revenue when your tax return was filed.

We have applied all or part of your Alabama income tax refund to the amount
owed. The computation is shown above. If a balance of refund is indicated, it
will be forwarded to you.

Individual Audit Section

**ATTACHMENT C**

Ala. Admin. Code r. 660-3-6-.08

ALABAMA ADMINISTRATIVE CODE
ALABAMA DEPARTMENT OF HUMAN RESOURCES
CHILD SUPPORT DIVISION
CHAPTER 660-3-6. STATE AND FEDERAL TAX OFFSET PROGRAMS
COPYRIGHT (C) 2006 BY STATE OF ALABAMA. ALL RIGHTS RESERVED

Current through March 31, 2007.
660-3-6-.08. Procedures For Handling Complaints.

(1) Complaints made Prior to Offsetting the Tax Refund

(a) Noncustodial parents (or their current spouses) may file a complaint orally or in
writing at any time after they receive the pre-offset notice.

(b) On receiving a complaint, the worker must conduct a case review in an effort to
resolve the complaint. The noncustodial parent (or their spouse in regard to tax offset)
may request an administrative review hearing. If a joint tax refund has already been offset
at the time of the complaint, the IV-D agency must refer the injured spouse to the IRS.

(c) If the review results in a deletion of, or decrease in, the amount referred for offset, the
Department must notify OCSE using prescribed procedures for updates.

(2) Complaints Involving Monies Previously Collected by IRS and Transmitted to DHR
for an Instate Order

(a) The Internal Revenue Service will issue notification to the noncustodial parent (and
their spouse if joint return filed) that part or all of a tax refund has been received to
satisfy a past-due support obligation and refer him to DHR to correct any errors or
answer questions. Requests for administrative review hearings should be made in writing
to the County DHR or the State DHR. Administrative review hearings where necessary,
will be conducted in accordance with "Appeals and Hearings" policy of the Department.

(b) The Department cannot conduct hearings on federal tax returns where the sole issue
involves joint refunds or joint returns. These cases must be referred to IRS.

(3) Complaints Involving Monies Previously Collected by the State Department of
Revenue and Transmitted to DHR for an Instate Order

**Attachment  D**

(a) Noncustodial parents (and their spouse if joint return filed) have thirty (30) days from the date of mailing of the notice of offset by the State Department of Revenue to appeal. Failure of the noncustodial parent (or spouse if joint return) to apply in writing for an administrative hearing at the County Department or State Department within the thirty (30) day period will constitute a waiver of any opportunity to contest the offset. Administrative hearings will be conducted in accordance with "Appeals and Hearings" policy of the Department.

(b) Taxpayers may appeal the administrative hearing decision of the Department through the courts by filing notice of appeal within thirty days of the date of notice of the final decision. Notice must be filed with the Commissioner of DHR and with the clerk or register of the appropriate circuit court.

(c) In accordance with state law, after final determination of the debt due the State as a result of an administrative hearing (or after thirty days, if the taxpayer does not request a hearing) state tax refund monies that are due the Department or its Title IV-D clients will be transferred from an escrow account (where they have been held) to the noncustodial parent's child support account. Any refund due will be issued to the taxpayer at the time monies are transferred from the escrow account.

(4) Complaints Involving Interstate Cases (Order Issued Outside Alabama)

(a) Upon receipt of a complaint from a noncustodial parent concerning a refund which may be or already has been offset, the child support worker must immediately conduct a review of the case in an effort to determine the complaint's validity.

1. If the sole issue of the complaint involved a federal joint return, the complaint should be referred to IRS.

2. If the refund has not already been offset and the certified amount is determined to be legitimately in dispute, a deletion or modification, as appropriate, must be submitted to OCSE within 10 working days of the review.

3. If the refund has been offset and it is determined in the review that money is owed the noncustodial parent, a refund to the noncustodial parent should be made promptly.

4. If the child support worker is unable to resolve a noncustodial parent's complaint and the NCP requests a review by the state which issued the order, the worker must notify the state which issued the support order within 10 days of the request. OCSE must also be advised of the transfer.

(b) The state (in Alabama this will be the local child support unit) with the order must send a notice to the noncustodial parent and custodial parent of the time and place of the review, conduct the review and make a decision within 45 days of the receipt of the notice and information from the certifying state. The reviewing state must base its decision on policy considerations of the submitting state.

(c) When the review results in a deletion of, or modification in, or a change in the amount referred for offset, they must notify OCSE within 10 working days of the administrative review using the regular update procedures. OCSE will confirm with the certifying state that the state with the order has deleted or modified a case due to a review. If the offset has already occurred, the state with the order must notify the submitting state of its decision and the submitting state must take steps to refund any excess amount offset to the noncustodial parent promptly. If the client has already been sent the money, he or she is to be asked to return it. He or she should be given the option of refunding it in equal monthly installments over a six (6) month period. (When a review is conducted in the state with the order, the submitting state is bound by the decision made by that state. As in intrastate cases, refunds in joint return cases are payable to both parties.)

### AUTHOR:

Janice Grubbs

### STATUTORY AUTHORITY:

P.L. 93-647; P.L. 98-378; 42 U.S.C. 651 *et seq.*; § 9 of P.L. 96-611; 42 U.S.C. 663; § 5011 of P.L. 101-508, 42 U.S.C. 664; 45 C.F.R. 205-235, 301-307; ALABAMA STATE PLAN--CHILD SUPPORT ENFORCEMENT PROGRAM; Code of Ala. 1975, §§ 30-4-80 through-98, 38-2-6, 38-2-6(1), 38-10-1 through-12, 40-18-100 through-109.

### HISTORY:

Emergency adoption effective August 8, 1985. Permanent adoption effective November 8, 1985. Succedent emergency amendment effective August 30, 1991. Succedent permanent amendment effective December 10, 1991. Succedent emergency amendment effective July 20, 1999. **Repealed:** Filed September 3, 1999; effective October 8, 1999 (**Ed. Note:** This rule was previously 660-3-6-.05).

Ala. Admin. Code r. 660-3-6-.08, AL ADC 660-3-6-.08

AL ADC 660-3-6-.08

END OF DOCUMENT

AL ADC 660-3-6-.08

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TRACY WOOTEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 2:07-cv-701-WKM** |
| | ) | |
| PAGE WALLEY, Commissioner | ) | |
| of theAlabama Department of | ) | |
| HumanResources, in his official | ) | |
| capacity, | ) | |
| | ) | |
| **Defendant.** | ) | |

## AFFIDAVIT

Before me, the undersigned authority, personally appeared **CLIFFORD SMITH,** who is known to me and who, having been first duly sworn, deposes and states as follows:

"My name is Clifford Smith. I am a resident of Lee County, Alabama, am over the age of 19 years, and am competent to testify as to the matters contained in this affidavit.

"I am employed by the State of Alabama Department of Human Resources as a Policy Analyst with the Child Support Enforcement Division. I have been employed in the capacity of Policy Analyst for 6 ½ years. I served as the administrative hearing officer from October 2001 through December 2005. I have checked my hearing log and never handled an administrative hearing request on behalf of Tracy Wooten. I have been employed by the Department of Human Resources for a total of 15 ½ years.

EXHIBIT

**3**

"The Department of Human Resources has an administrative hearing policy in place which is addressed in Section Fourteen of the Child Support Policy and Procedures Manual. (A copy of Chapter 14 is attached and labeled as Attachment "A".) The administrative hearing process may be implemented by a custodial parent, a non-custodial parent or any other directly affected individual (or their representative).

"The affected individual has the right to request a review of any action or inaction taken by the Department of Human Resources. The person may request a conference with the child support worker who has been handling the case or may request a review of the case at the county level without a conference with the worker. The affected individual may also request an administrative hearing at the State Office level of Child Support Enforcement. The request for any of these three options must be submitted in writing to the County Department of Human Resources that is handling the child support case or to the State Office of Child Support Enforcement.

"Upon accepting a hearing request, the applicant is notified of the time and date of the hearing and sent copies of the hearing procedures, instructions for hearings by telephone, a Telephone Hearing Consent form, and the Alabama Department of Human Resources Administrative Code, Chapter 660-1-5. A written decision concerning the outcome of the hearing must be issued within 30 days of the date of the hearing, unless waived by both parties. Within 15 days of the issuance of the hearing decision, the applicant may file a request for a rehearing. Section 14.4.11(b) of the Child Support Policy and Procedures Manual outlines the criteria used to determine if a rehearing should be granted. A party dissatisfied with the hearing may file a notice of appeal with the agency and a petition for judicial review in the circuit court within thirty days after

receiving the final hearing decision or receiving the results of an application for rehearing.    The judicial review of administrative decisions is governed by *Ala. Code 1975*, § 41-22-20.

"The Alabama Department of Human Resources Administrative Code Chapters 660-1-5 and 660-3-15 outline all rules and procedures for administrative hearings with the Department of Human Resources.    The Alabama Legislature has made this information available to the public from the Legislative Reference Service, from the Supreme Court Law Library, and through legal electronic databases.    Further, the Administrative Code is available on line at the official website of the State of Alabama at http://alabamaadministrativecode.state.al.us/docs/hres/index.html.


**CLIFFORD SMITH**

Sworn to and subscribed before me on this the _11th_ day of _March_, 2008.

Notary Public, State at Large
My Commission Expires: _9/8/08_

# Chapter 14

# ADMINISTRATIVE REVIEWS, ADMINISTRATIVE HEARINGS, AND JUDICIAL APPEALS

**Attachment A**

# TABLE OF CONTENTS

**14.    ADMINISTRATIVE REVIEWS, ADMINISTRATIVE HEARINGS, AND JUDICIAL APPEALS.. 1**

**14.1    INTRODUCTION** ................................................................................................................. 1

**14.2    LEGAL BASIS** .................................................................................................................. 1
14.2.1    STATE STATUTES .................................................................................................. 1
14.2.2    FEDERAL REGULATIONS ....................................................................................... 2

**14.3    ADMINISTRATIVE REVIEWS FOR GENERAL COMPLAINTS** ...................................... 2

**14.4    ADMINISTRATIVE HEARINGS** ....................................................................................... 3
14.4.1    THE HEARING OFFICER'S ROLE ........................................................................... 3
    14.4.1.a  Pre-Hearing ...................................................................................................... 3
    14.4.1.b  During the Hearing .......................................................................................... 4
    14.4.1.c  Post-Hearing ................................................................................................... 4
14.4.2    HEARING TYPES ..................................................................................................... 4
    14.4.2.a  General Dissatisfaction .................................................................................... 4
    14.4.2.b  Non-TANF IV-D Services Application ............................................................... 5
    14.4.2.c  Tax Offset ......................................................................................................... 5
    14.4.2.d  Review and Adjustment .................................................................................... 5
    14.4.2.e  Consumer Credit Reporting ............................................................................. 5
    14.4.2.f   Financial Institution Data Match ...................................................................... 6
    14.4.2.g  Administrative Income Withholding .................................................................. 6
    14.4.2.h  License Suspension/Revocation ...................................................................... 6
    14.4.2.i   Passport Denial/Revocation/Restriction .......................................................... 6
14.4.3    TIMEFRAMES FOR A REQUEST ............................................................................ 7
14.4.4    REQUEST FORMAT ................................................................................................. 7
14.4.5    PROCESSING THE REQUEST ................................................................................ 8
14.4.6    DISMISSAL/DENIAL OF THE REQUEST ................................................................ 8
14.4.7    PRE-HEARING ACTIVITIES ..................................................................................... 9
    14.4.7.a  Pre-Hearing Conferences and Reviews .......................................................... 9
    14.4.7.b  Hearing Request Accepted ............................................................................ 10
    14.4.7.c  The Hearing Notice ........................................................................................ 10
    14.4.7.d  Subpoenas ..................................................................................................... 12
    14.4.7.e  Discovery ........................................................................................................ 12
14.4.8    WITHDRAWALS AND SETTLEMENTS ................................................................. 13
    14.4.8.a  Withdrawals .................................................................................................... 13
    14.4.8.b  Settlements ..................................................................................................... 13
14.4.9    THE HEARING ....................................................................................................... 14
    14.4.9.a  Format ............................................................................................................ 14
    14.4.9.b  The CSW's Role ............................................................................................ 14
    14.4.9.c  General Proceeding ........................................................................................ 15
    14.4.9.d  Exhibits .......................................................................................................... 15
    14.4.9.e  Failure to Appear ........................................................................................... 16
    14.4.9.f   Group Hearing ............................................................................................... 17
    14.4.9.g  Combined Hearing ......................................................................................... 17

## TABLE OF CONTENTS

**14.4    ADMINISTRATIVE HEARINGS (continued)** ......................................................................
   14.4.10  THE DECISION........................................................................................... 17
     14.4.10.a  Timeframes ............................................................................... 17
     14.4.10.b  Distributing the Decision ........................................................... 18
   14.4.11  APPLICATION FOR REHEARING ............................................................. 18
     14.4.11.a  Application Filed ........................................................................ 18
     14.4.11.b  Criteria for Granting a Rehearing ............................................. 19
     14.4.11.c  Rehearing Granted.................................................................... 19
     14.4.11.d  Rehearing Denied ..................................................................... 19
   14.4.12  JUDICIAL REVIEW .................................................................................. 20
   14.4.13  THE ADMINISTRATIVE HEARING RECORD............................................ 20

**14.8    LEGAL REFERENCES**........................................................................................... 21

**14.9    DOCUMENT REFERENCES** .................................................................................. 21

**14.10  SCREEN REFERENCES**........................................................................................ 21

## 14.    ADMINISTRATIVE REVIEWS, ADMINISTRATIVE HEARINGS, AND JUDICIAL APPEALS

### 14.1    INTRODUCTION

A.  Parties to IV-D child support cases have the right to contest actions taken (or actions not taken) on their cases by the Department of Human Resources (DHR).  DHR provides a written statement regarding the right to an administrative review or administrative hearing to participants at the time of application for services and at the time various actions are taken on a case.  It is also available to anyone else upon request.  Such complaints are handled informally by the child support worker (CSW) and supervisor, if necessary.  If the supervisor cannot resolve the issue to the party's satisfaction, DHR is responsible for conducting an administrative hearing before a hearing officer with Child Support Enforcement (CSE).

B.  Additionally, as with other legal processes, parties to child support court orders may file judicial appeals if they disagree with the court orders' provisions.

C.  This chapter provides guidance to the child support worker (CSW) for fulfilling his/her role in administrative reviews, administrative hearings, and judicial appeals.  The evidence definitions provided in this chapter are applicable to both administrative hearings and judicial appeals, except as specifically indicated.  Otherwise, the information specific to either type of appeal is discussed under the appropriate heading, (i.e., **Section 14.3 ADMINISTRATIVE REVIEWS, Section 14.4  ADMINISTRATIVE HEARINGS,** and **Section 14.5  JUDICIAL APPEALS**).

### 14.2    LEGAL BASIS

### 14.2.1    STATE STATUTES

A.  Administrative hearings are defined and governed by Chapter 660-1-5 and 660-3-15 of the Alabama Administrative Code and the <u>Code of Alabama 1975</u>, as amended,  §41-22-1 through §41-22-27.

B.  Paternity appeals are set forth in §26-17-20 of the Uniform Parentage Act (<u>Code of Alabama 1975</u>, as amended).   Juvenile Court/District Court Appeals are covered under Rule 28, Alabama Rules of Juvenile Court Procedure.  Post-trial procedures are governed by Rule 4, Alabama Rules of Appellate Procedure.  Post trial motions (30 day timeframe) are governed by Rule 59, Alabama Rules of Civil Procedure (<u>Code of Alabama 1975</u>, as amended).  The rule governing the period after which post trial motions are automatically denied is found at Rule 59.1, Alabama Rules of Civil Procedure (<u>Code of Alabama 1975</u>, as amended).

## 14.2.2    FEDERAL REGULATIONS

A.  Standards for general administrative reviews on complaints are covered in 45 CFR 303.35.

B.  The criteria and procedures for administrative reviews on Federal income tax intercepts are covered by 45 CFR 303.72.

C.  Procedures for State tax intercept reviews are specified in 45 CFR 303.102.  The regulation regarding review and adjustment of support orders is at 45 CFR 303.8.

D.  The regulation regarding Administrative Income Withholding is at 45 CFR 303.100.  Certain administrative procedures including FIDM and License Suspension/Revocation are subject to due process safeguards including requirements for an opportunity to contest the action as provided for in 42 U.S.C. 666.

E.  Procedures for judicial appeals are governed by State law.

## 14.3    ADMINISTRATIVE REVIEWS FOR GENERAL COMPLAINTS

A.  An administrative review can be requested by a noncustodial parent, alleged father, custodial parent, or other directly affected individual (or their representative) when dissatisfied with services provided, when there is evidence that an error has occurred regarding actions taken on their case, or when an action should have been taken on their case.  This includes both individuals in this State and individuals from other States.

B.  Copies of the Child Support Administrative Complaint Procedure and the Request for Administrative Review forms should be made available to all participants by placing the documents in a central location readily accessible to the public in the County Department. The documents should be distributed to new applicants and made available to all other participants.

C.  A request for a review may be accepted in any written form.

D.  The Child Support Administrative Complaint Procedure and the Notice of Decision Regarding Administrative Review provide notice to the aggrieved person that they may request an administrative review or administrative hearing by the State Department if they are dissatisfied after a County Department review.

E.  All requests for an administrative review received by the County Department should be conducted timely, with the results being mailed to the participant within thirty (30) days after receipt by the County Department.

## 14.4    ADMINISTRATIVE HEARINGS

A.  An administrative hearing is a process by which an aggrieved party to a IV-D case may take his/her grievance before a hearing officer.  Administrative hearings are confidential and are not open to the public.  Usually, the person requesting the hearing (the claimant), his/her legal representative and DHR personnel, are the only participants present at the hearing. However, the hearing officer, at his/her discretion, may allow the following people to be present at the hearing:

   1.  Individuals with administrative, regulatory, or law enforcement interest.

   2.  The claimant's family members.

   3.  Other non-participants, if the person who requested the hearing and DHR consent to their presence.

B.  The hearing officer has the authority to remove anyone from the hearing who is disruptive to the proceeding.


### 14.4.1    THE HEARING OFFICER'S ROLE

The hearing officer is a CSE employee or other designee who has full control of the hearing. The hearing officer's duties include:

#### 14.4.1.a    Pre-Hearing

A.  Requesting additional information regarding the hearing request, if necessary.

B.  Accepting or denying the hearing request.

C.  Scheduling the hearing.

D.  Notifying all parties of the hearing's time, date, and place.

E.  Explaining hearing conduct, including the manner in which the decision will be made.

F.  Explaining to the claimant that (s)he has the right to a review by the Child Support Unit (CSU) handling his/her case at any reasonable time.

G.  Supervising compliance of discovery requests by both parties.

H.  Deciding that the hearing record will be either:

   1.  A complete verbatim transcription from a tape recording.

   2.  A tape recording; or

3.  A summary report containing the main facts, including testimony, questions, and rebuttals, to be backed up by a verbatim recording.

### 14.4.1.b    During the Hearing

A.  Directing the hearing.

B.  Receiving evidence, including testimony, documents, and exhibits.

C.  Administering oaths to witnesses.

D.  Examining witnesses.

E.  Ruling on questions of evidence by either accepting the evidence or excluding it.

### 14.4.1.c    Post-Hearing

A.  Advising the claimant of his/her right to review the hearing record at any reasonable time.

B.  Issuing a final decision on the case, including a requirement for DHR to take the appropriate action, if action is needed.

C.  Disseminating the decision.

D.  Accepting and denying applications for rehearing.

### 14.4.2    HEARING TYPES

Generally, all administrative hearings are conducted in the same manner.  However, the type of hearing affects the CSW's decision on what evidence to prepare for the hearing.  Administrative hearings may be held on the following topics:

### 14.4.2.a    General Dissatisfaction

A.  The noncustodial parent (NCP), alleged father (AF), custodial parent (CP), or other directly affected individual (or their representative) may request a hearing when dissatisfied with:

1.  Services provided.

2.  Actions taken or not taken on the IV-D case; or

3.  Any other matter regarding those services or actions.

B.  The purpose of this type of hearing is to determine if DHR acted appropriately.

### 14.4.2.b    Non-TANF IV-D Services Application

Any individual or his/her representative whose application for non-TANF services with DHR is denied, may request an administrative hearing.  The purpose of this type of hearing is to determine if DHR acted appropriately in denying the application for services.

### 14.4.2.c    Tax Offset

A. When the NCP registers a complaint regarding the interception of his/her Federal and/or State income tax refund(s), the CSW reviews the NCP's complaint.  If (s)he is unable to satisfactorily resolve the issue, the child support supervisor reviews the complaint.  The CSW must advise the NCP of the result of both these reviews (see **Section 9.8.3.d  The NCP Contests the Offset (Prior to the Offset)**).  Additionally, the CSW advises the NCP of his/her right to request an administrative hearing if dissatisfied with the results of the reviews.

B. The NCP or his/her representative may simultaneously contest both tax offsets, or may just object to one of them.  Usually, the hearing involves only the issue the NCP contests.  For instance, if (s)he only objects to the interception of his/her State income tax refund, that will probably be the only action addressed in the hearing.  However, if the hearing officer determines that both the Federal and State tax offsets should be addressed in the hearing (even though the NCP only contested the State tax offset), (s)he may set the hearing on both issues.

C. The purpose of a tax offset hearing is to determine if DHR correctly certified the NCP's arrearages for tax offset.  A tax offset hearing is allowed under State law, but is not required under Federal law.

### 14.4.2.d    Review and Adjustment

After the CSW conducts the desk review (see **Section 9.14  REVIEW AND ADJUSTMENT**), and notifies the NCP or CP of the results and any proposed action to adjust the child support order, either party (or their representatives) may have a supervisory review if they are dissatisfied with the CSW's review results.  They may also request an administrative hearing if dissatisfied with the supervisory review.  The purpose of this type of hearing is to determine if DHR's determination of whether to adjust the order is appropriate.

### 14.4.2.e    Consumer Credit Reporting

DHR provides advance notice (via the billing statement) to the NCP before referring information regarding his/her arrearages to credit reporting agencies (see **Section 9.7.5  NONCUSTODIAL PARENT CONTESTS THE ACTION**).  The notice advises the NCP that (s)he may contest the action by contacting the county DHR office.  If the NCP contests the referral, county DHR staff will review the case and notify the NCP in writing of DHR's finding.  Additionally, the written notice advises the NCP of his/her right to request an administrative hearing if (s)he's dissatisfied with the county's determination.  The purpose of the hearing is to determine if DHR's arrearage calculation is correct and warrants referral to the credit reporting agencies.

### 14.4.2.f    Financial Institution Data Match

The NCP is advised in the Obligor Notice of Lien, as well as the Financial Institution Data Match Notice that he/she has a right to an administrative desk review of the action taken to implement a lien and levy against his/her assets (see **Section 9.18.10.b    Administrative Review Procedure**). Instructions are included as to how to request the review, what information to provide, and how the review will be conducted. The NCP is advised in the Results of FIDM Review document that he/she has a right to request an administrative hearing if dissatisfied with the administrative review results (see **Section 9.18.10.d   Right to Administrative Hearing**).

### 14.4.2.g    Administrative Income Withholding

The NCP has a right to an administrative desk review of the action taken to implement an Income Withholding Order administratively. The Obligor Notice of Right to Administrative Review document provides instructions on how to request a review. If the issue cannot be resolved through a desk review, the NCP has a right to request an administrative hearing. The NCP is advised in the Notice of Decision Regarding Administrative Review document how to request an administrative hearing. (See **Section 9.2.9    THE NONCUSTODIAL PARENT CONTESTS THE ADMINISTRATIVE INCOME WITHHOLDING ORDER**.)

### 14.4.2.h    License Suspension/Revocation

The NCP is advised in the Notice of Intent to Suspend/Revoke a license that he/she may request a hearing to contest the action. A Response to the Notice document is provided for the NCP to return to the County Department to request an administrative hearing to show cause why suspension/revocation is inappropriate.

### 14.4.2.i    Passport Denial/Revocation/Restriction

In the same pre-offset notice in which the NCP is informed of the referral for tax intercept, he/she is also informed of passport denial/revocation/restriction (see **Section 9.8.6.b    Pre-Offset Notice**). The notice informs the NCP of his/her right to contest the determination that the amount of past-due support is owed by requesting an administrative review. Additionally, the CSE advises the NCP of his/her right to request an administrative hearing if dissatisfied with the results of the review.

### 14.4.3   TIMEFRAMES FOR A REQUEST

A. To qualify for an administrative hearing regarding general complaints, the county CSU or CSE must receive the written hearing request within 30 days after:

    1. The action (or inaction) occurred; or

    2. The claimant learned of the action.

B. When the claimant is contesting a tax offset, his/her written complaint must be postmarked within 30 days after the date the offset notice was mailed in order to qualify for a hearing.

C. When the claimant is contesting Review and Adjustment, his/her written request must be received within 30 days of the date shown on the Notice of Results of Review of Child Support Order (DHR-CSD-1754) document.

D. When the claimant is contesting Financial Institution Data Match (FIDM), his/her written request must be received by the State Office FIDM Unit within 30 days of the date shown on the Results of FIDM Review document.

E. When the claimant is contesting Administrative Income Withholding, his/her written request must be received by the County DHR Office within 30 days of the date shown on the Results of Administrative Review document.

F. When the claimant is contesting Drivers License Suspension or Revocation, his/her written request must be received by the County DHR Office within 15 days of the date shown on the Notice of Intent to Suspend or Revoke an Alabama License document.

### 14.4.4   REQUEST FORMAT

A. The request for an administrative hearing must:

    1. Be in writing to either the county CSU or CSE.

    2. Be received within the applicable timeframe.

    3. Clearly state that the claimant wishes to present his/her case to a higher authority.

    4. Present a valid reason for a hearing and provide specific information supporting that reason.

    5. Provide the date of the action or the date of dissatisfaction; and

    6. Contain a definite statement by the party to the case that the request is made with his/her authorization, if filed by a representative.

## 14.4.5    PROCESSING THE REQUEST

A.  When the claimant sends his/her hearing request to the CSU:

1.  Report the request to the CSE hearing officer by telephone, e-mail, or fax on the date received.

2.  Immediately send CSE the original hearing request with a cover letter containing the following information:

    a)  The claimant's name, address, participant ID number, and DHR file number;

    b)  The basis of the hearing request; and

    c)  The date the hearing request was received.

3.  Access the EVM screen to record the hearing request and subsequent action.

B.  CSE must receive the original hearing request and the cover letter within ten days after the CSU received it.

C.  When the claimant sends his/her hearing request to CSE, the hearing officer will telephone, e-mail, or fax  the CSU the same day to advise them of the request and to request information, if necessary.  Upon receiving such a notice from the hearing officer:

1.  Immediately gather any requested information and provide it to the hearing officer.

2.  Access the EVM screen to record the hearing request and subsequent action.

## 14.4.6    DISMISSAL/DENIAL OF THE REQUEST

A.  When the hearing officer receives the hearing request, (s)he may deny or dismiss it if:

1.  The request was not made within the applicable timeframe.

2.  The request is withdrawn.

3.  A hearing opportunity is not given by law on the issue presented.

4.  Services are provided as per law or court order.

5.  The issue involves custody or visitation.

6.  The issue involves the amount of child support ordered.

7.  The claimant applies for some service that is not provided by DHR.

    8.  Services are reduced or terminated to a class of recipients due to changes in State or Federal laws or regulations, or funding.

    9.  The issue is moot, or DHR has canceled the action for which the claimant has requested a hearing; or

   10.  The claimant, after being served with notice, fails to appear at the hearing without good cause.

B.  When the hearing officer determines that a hearing request should be denied, (s)he will send a letter to the claimant.  The letter informs the claimant that his/her request has been denied and provides the reason why it was denied.  The hearing officer sends copies of the letter to:

    1.  The county CSU.

    2.  The child support field supervisor.

    3.  DHR's Legal Office.

    4.  The Tax Offset Unit, if the hearing is on a tax offset; and

    5.  The Financial Institution Data Match Unit, if the hearing is on a FIDM issue.

## 14.4.7    PRE-HEARING ACTIVITIES

### 14.4.7.a    Pre-Hearing Conferences and Reviews

A.  Before a hearing is held, either the claimant or the CSE director may request additional action by the CSU to possibly resolve the issue without the need for a hearing.

B.  The claimant or his/her representative can request a conference with the CSU to discuss the situation and present information to show that the action taken was incorrect.  Such a conference does not alter his/her right to an administrative hearing.  If the conference results in a resolution to the issue, put it in writing and have the claimant sign it.  If the claimant has requested an administrative hearing and the issue is resolved, have the claimant sign a statement withdrawing the hearing request.

C.  The CSE director may refer the hearing request to a CSE staff member for further review. The CSE employee either conducts the review or asks the county director of the DHR office handling the case to review it.  If the review shows that the CSU should take any action, initiate it immediately.

D.  Neither the CSU's review of a case nor the review's result can cause the hearing to be delayed or canceled without the claimant's consent.

## 14.4.7.b    Hearing Request Accepted

A.  When the hearing officer accepts a hearing request (s)he:

1.  Drafts a letter of acknowledgment explaining how the hearing is conducted and informing the claimant that:

a)  (S)he has a right to present his/her own case or to have legal counsel licensed to practice law in Alabama, or some other person of his/her choice, represent him/her at his/her cost;

b)  (S)he has a right to present written evidence and oral testimony during the hearing;

c)  (S)he may bring members of his/her family or other witnesses to the hearing;

d)  (S)he may request a review by the county CSU or State CSE and the written result of that review will be an agency exhibit at the hearing;

e)  The hearing will be held at a place convenient to the case which in most instances is either the State CSE office or the DHR office handling the case, and (s)he will be notified of the time, date, and place of the hearing; and

f)  (S)he, CSE, or DHR can ask the hearing officer to subpoena witnesses for the hearing;

2.  Sends the letter to the claimant; and

3.  Sends copies of the letter to:

a)  The county CSU;

b)  The child support field supervisor;

c)  DHR's Legal Office;

d)  The Tax Offset Unit, if the hearing is on a tax offset; and

e)  The Financial Institution Data Match Unit, if the hearing is on a FIDM issue.

## 14.4.7.c    The Hearing Notice

A.  Upon scheduling the hearing, the hearing officer:

1.  Drafts a hearing notice containing the following information:

a)  The time, date, and place of the hearing;

   b)  The nature of the hearing;

   c)  A statement of CSE's legal authority and jurisdiction for conducting the hearing;

   d)  A reference to applicable statutes and rules;

   e)  A statement of the matters asserted and the issues involved; and

   f)  Any other information the hearing officer deems important.

2.  At least 14 days prior to the hearing, serves the hearing notice upon the claimant by one of the following methods:

   a)  Certified mail, return receipt requested;

   b)  Sheriff, constable, or other officer authorized to provide service of process in Alabama;

   c)  Any employee, agent or representative of DHR;

   d)  First class mail, with a self-addressed, postage prepaid postcard or letter attached for the claimant to acknowledge receipt; or

   e)  First class mail without a postcard or letter attached for the claimant's acknowledgment.

3.  At least 14 days prior to the hearing, sends copies of the hearing notice to:

   a)  The CSU;

   b)  The child support field supervisor;

   c)  DHR's Legal Office; and

   d)  In tax offset hearings to:

      (1)  The Tax Offset Unit
      (2)  The non-TANF CP

NOTE:  The non-TANF CP may attend the tax offset hearing if (s)he wishes.  However, his/her presence is not mandatory unless (s)he is required as a witness.

   e)  In FIDM hearings to the FIDM Unit.

B.  Upon receiving the hearing notice, the CSW:

   1.  Gathers evidence for the hearing (see **Section 14.5   EVIDENCE AND RULES OF EVIDENCE**).

   2.  Accesses the EVM screen to note that a hearing is scheduled on the case.

   3.  Accesses the WCS screen to record the hearing date.

### 14.4.7.d    Subpoenas

The claimant county, DHR or CSE may ask the hearing officer to subpoena witnesses for appearance at the hearing or to subpoena documents to be presented as evidence at the hearing.  The subpoena request may be made orally, followed by a written confirmation showing the name and address of the person to be subpoenaed.  The hearing officer must receive the subpoena request no later than ten days before the hearing.  If the party who requested a hearing asks the hearing officer to issue a subpoena, CSE may assess the party a reasonable charge for processing and service of process.

### 14.4.7.e    Discovery

A.  Discovery is the process of obtaining information regarding the issues at hand.  The courts' rules of discovery do not apply in administrative hearings.  However, the party requesting the hearing has the right to seek and receive from DHR and/or the hearing officer certain information relevant to the hearing.  To preserve this right, the claimant should make his discovery request to the hearing officer no later than five days before the hearing.  If (s)he does not make his/her request at least five days before the hearing, the hearing officer at his/her discretion, may grant a recess during the hearing to allow for review and copying of documents.  The claimant has the right to:

   1.  A short written statement of matters to be presented at the hearing.

   2.  Any written or recorded statement made by him/her to DHR personnel regarding the issue on which the hearing is being held.

   3.  Review and copy, at cost, any evidence DHR will present at the hearing.

   4.  Request that the hearing officer review or order DHR to review DHR records for any evidence tending to clear, support, or exonerate him/her.

   5.  Review and copy, at cost (as defined by current Departmental policy), any non-confidential documents in DHR's custody.

   6.  Review and copy, at cost (as defined by current Departmental policy), all documents in the official hearing record kept by the hearing officer.

## 14.4.8    WITHDRAWALS AND SETTLEMENTS

### 14.4.8.a    Withdrawals

A.  The party requesting an administrative hearing may withdraw his/her request at any time. To withdraw the request, (s)he should send a letter of withdrawal to either State CSE or the county CSU.  However, a verbal statement of withdrawal is acceptable if the claimant refuses to provide a written withdrawal.  Any refusal to provide a written withdrawal should be documented in ALECS case notes.  The hearing request is considered withdrawn on the date:

1.  A mailed, written withdrawal request is postmarked.

2.  A written withdrawal is hand-delivered to CSE or the CSU; or

3.  The claimant makes a verbal statement of withdrawal and refuses to provide a written withdrawal.

B.  When the claimant submits his/her withdrawal to the CSU, forward it to the hearing officer. When the hearing officer receives a withdrawal, either through the CSU or directly from the requesting party, (s)he will issue a written dismissal of the hearing to everyone who received the hearing notice.

### 14.4.8.b    Settlements

A.  Prior to the hearing, the parties may settle the issue.  When a settlement is reached:

1.  Put it in writing.

2.  Have the claimant sign the written settlement.

3.  File the settlement with the hearing officer.

B.  Upon receiving a settlement, the hearing officer makes it part of the official hearing record and issues a written dismissal of the hearing to everyone who received the hearing notice.

C.  A settlement may take one of the following forms:

1.  A stipulation where all parties agree to the same things; or

2.  A consent where the claimant acknowledges that the previously disputed action was correct.

## 14.4.9    THE HEARING

### 14.4.9.a    Format

A. The hearing may be held in-person, meaning all parties physically appear at the designated place and time.  Usually, an in-person hearing is held at the DHR office where the case is handled.  At his/her discretion, the hearing officer may determine that another place is more convenient to the case.  When an in-person hearing is scheduled, all parties bring their evidence to the hearing with copies for the hearing officer and the opposing party.  Evidence presented to the hearing officer must be certified as true and accurate.

B. The hearing may also be held by teleconference, meaning that the hearing is held over the telephone with all parties present via a conference call.  The hearing officer or any party to the hearing can request that the hearing be held by teleconference.  However, the hearing will be held by this method only if all parties consent to it.  (S)he notifies all parties of the time and date for which a teleconference hearing is scheduled.  The hearing officer may include notification of the teleconference in the hearing notice or send separate notice.  When a teleconference hearing is scheduled, all parties must submit their evidence to the hearing officer and send a copy to the opposing party at least five days before the hearing.

### 14.4.9.b    The CSW's Role

A. In the hearing, usually the CSW is responsible for presenting DHR's case for the action taken.  In this role, the CSW:

1. Makes an opening statement that includes an explanation of the action taken.

2. Presents documents pertinent to the action.

3. Presents facts regarding court orders, payment records, and other pertinent records.

4. Asks to submit the presented documents as evidence; and

5. Makes a closing statement that:

   a) Summarizes his/her testimony and evidence; and

   b) Includes reasoning, based on applicable laws, regulations and policies, as to why (s)he believes the action taken was correct and should be upheld.

#### 14.4.9.c    General Proceeding

A. After the CSW presents his/her case, the hearing officer provides the opposing party the opportunity to make an opening statement and question the CSW regarding his/her testimony and/or evidence.  The hearing officer also asks the opposing party if (s)he has any objections to the CSW's evidence.

B. Then the other party submits his/her case.  The CSW may question the opposing party regarding his/her evidence or testimony, and may object to that evidence or testimony.

C. The hearing officer rules on any objections lodged by either side and gives the evidence the weight (s)he deems appropriate.

D. The hearing officer may question witnesses or even call witnesses to get information (s)he deems pertinent to the hearing.  The only questions that either side may ask the hearing officer are those regarding hearing procedure.

#### 14.4.9.d    Exhibits

A. The exhibits the CSW will present at the hearing are partially determined by the type of hearing to be held.  For instance, a hearing on a proposed adjustment of a child support obligation would include documents pertinent to the review and adjustment desk review that would not be pertinent in another type of hearing.  However, there are some documents that should be included as exhibits in every hearing:

1. The Policy and Procedures Manual for Child Support Enforcement.

2. Certified copies of court orders.

3. Certified copies of payment records, including payment records of collection agents other than DHR, if applicable.

4. A written statement from the county director, field supervisor, and/or county child support supervisor regarding his/her findings after reviewing the case, if such a review was conducted.

5. A copy of the TANF application form on TANF cases.

6. A copy of the Application for Child Support Services (PSD-BCS-570) on non-TANF cases.

7. A copy of the Important Legal Notice.

B. Again, other documents should be included depending on the type of hearing to be held.  Particularly, for tax offset hearings, always include copies of documents verifying the arrearage amount certified for offset.

C. Always take the case record to the hearing so that if additional documents from the record are needed as evidence, they are available.

### 14.4.9.e    Failure to Appear

A. As stated in **Section 14.4.7.c  The Hearing Notice**, all parties receive notice of the time, date, and place of the hearing.  If a party fails to appear at the hearing after receiving that notice and does not contact the hearing officer, or county DHR office, before the scheduled hearing to explain his/her inability to be present, the hearing officer may:

1. Adjourn the hearing temporarily, (call a recess or terminate the proceeding until the following morning).

2. Continue the hearing (set it for a later date).

3. Hold the hearing without the missing party; or

4. Dismiss the hearing.

B. Sometimes a party may have a good reason (good cause) for being unable to attend a hearing. The hearing officer makes the determination of whether the party's reason for being unable to appear at the hearing is good cause.  Circumstances that generally qualify as good cause include, but are not limited to:

1. Death in the family.

2. Serious personal injury or illness; and

3. Unexpected emergencies.

C. The hearing officer's action will depend on when the party provides the good cause information.  If the party provides the information before the hearing, the hearing officer may reschedule the hearing (either earlier or later than originally set).  If the party provides the information at the time of the hearing, the hearing officer may adjourn or continue the hearing.  If the party provides the information after the hearing, the hearing officer may reopen the hearing.

D. When the hearing is held and the decision is against the missing party, the missing party may apply for a rehearing within 15 days after the hearing officer issues the adverse decision (see **Section 14.4.11  Application for Rehearing**).

### 14.4.9.f    Group Hearing

A. Sometimes the hearing officer will schedule a group hearing when multiple parties (with unrelated IV-D cases) request hearings on issues involving:

1. State and/or Federal laws or changes in them; or

2. State and/or Federal regulations or changes in them.

B. A group hearing works in the same manner as other hearings.  Each individual, or his/her representative, presents his/her individual case.  When the hearing officer schedules a group hearing, (s)he limits the number of cases to be heard.  By doing so, (s)he ensures that the hearing is orderly and efficient and that each party has adequate opportunity to present his/her case.  After the hearing, each party receives a written decision.

C. If a party asks that (s)he be given an individual hearing instead of a group hearing, the hearing officer, at his/her discretion, may grant the request.

### 14.4.9.g    Combined Hearing

Occasionally, a party requests a hearing on issues involving both the IV-D Program and another program under DHR, such as the TANF Program.  When this happens, the hearing officer may schedule a combined hearing on both issues.  At the hearing, there will be both a child support hearing officer and a hearing officer for the other program.  Each hearing officer may render a separate decision on his/her respective program area, or the hearing officers may render a combined decision covering both programs.

### 14.4.10    THE DECISION

A. After holding a hearing, the hearing officer renders a written decision and signs it.  The hearing decision separately states the findings of fact and conclusions of law upon which it is based.  The decision, unless it is overturned by a court of competent jurisdiction or the hearing officer reopens the hearing, is final and binding upon the requesting party and DHR.

B. If the hearing decision states that DHR acted improperly, DHR will take the appropriate corrective action as soon as possible.

### 14.4.10.a    Timeframes

A. In all hearings, the hearing officer issues a written decision within 30 days after the hearing.

B. In a FIDM hearing request, an administrative hearing will be conducted within 90 days of receiving the written request.

C. The hearing officer is bound by these timeframes unless the claimant and DHR agree to waive them.

### 14.4.10.b    Distributing the Decision

A.  The hearing officer serves a copy of the decision upon the claimant by certified mail, return receipt requested.  (S)he sends copies to the following entities through DHR's hand mail:

   1.  The county CSU.

   2.  The child support field supervisor.

   3.  DHR's Legal Office; and

   4.  CSE's Tax Offset Unit, if the hearing was in regard to a tax offset.

   5.  The Financial Institution Data Match Unit, if the hearing is on a FIDM issue.

### 14.4.11    APPLICATION FOR REHEARING

A.  Within 15 days after a final hearing decision is rendered, the parties (including DHR) may file an application (a written request) with the hearing officer for a rehearing of the matter.  The application must be made in writing and state the grounds and the legal authority for a rehearing.

B.  Filing an application for rehearing does not suspend, delay, or extend the hearing decision's effective date unless the hearing officer or a court of competent jurisdiction supersedes, modifies or sets aside the hearing decision.

### 14.4.11.a    Application Filed

A.  Upon receiving an application for rehearing, the hearing officer has 30 days from the application's postmark to issue a ruling on it.  If (s)he does not issue a decision on the application within 30 days, the application is deemed denied.  (S)he immediately serves a copy of the application upon the opposing side.  For instance, if the NCP files an application for rehearing, the hearing officer serves a copy on DHR.  Service upon DHR would be accomplished through DHR's hand mail.  Service upon a party to the case, such as the NCP, would be accomplished through certified mail, return receipt requested.

B.  The party served with a copy of the application has ten days to provide his/her answer to the issues asserted in the application.

### 14.4.11.b    Criteria for Granting a Rehearing

A.  The hearing officer will grant a rehearing:

1.  If a review of the application and the decision reveals that the decision:

a)  Violates constitutional or State law;

b)  Exceeds DHR's statutory authority;

c)  Violates any rules governing DHR;

d)  Was made upon unlawful procedure or other error of law;

e)  Is incorrect in view of the reliable, probable and substantial evidence in the record; or

f)  Is unreasonable, arbitrary or capricious or characterized by an abuse or unwarranted use of discretion.

2.  If the decision was rendered after a party failed to appear at the hearing and:

a)  The decision is against the missing party; and

b)  The missing party, in his/her application for rehearing, shows good cause for his/her failure to appear.

### 14.4.11.c    Rehearing Granted

A.  Upon deciding to grant a rehearing, and within 30 days after the application is filed, the hearing officer:

1.  Enters a written decision setting a hearing on the application; or

2.  Enters a decision, based on information provided in the application for rehearing, changing the original hearing decision; and

3.  Serves the decision upon all parties.

### 14.4.11.d    Rehearing Denied

A.  If the hearing officer determines that a rehearing is inappropriate, (s)he:

1.  Issues a decision denying the rehearing; and

2.  Serves the decision upon all parties.

B.  If the hearing officer does not issue a decision within 30 days, the application is deemed denied.

## 14.4.12    JUDICIAL REVIEW

A party dissatisfied with a hearing decision may file a notice of appeal and cost bond of the decision with the State or County Department.  The party must file the notice and cost bond within 30 days after receiving the final hearing decision, or within 30 days after receiving the decision on an application for rehearing.  A petition for judicial review must be filed with the Circuit Court with jurisdiction over the county where DHR initiated the contested action or with Montgomery County Circuit Court within 30 days of the filing of the notice of appeal.  The filing of the notice of appeal or petition for review does not delay enforcement of the hearing decision unless the Circuit Court orders DHR not to enforce the decision while the judicial review is pending.

## 14.4.13    THE ADMINISTRATIVE HEARING RECORD

A.  The hearing record contains the following information:

   1.  All pleadings, motions and intermediate rulings.

   2.  All evidence received or considered.

   3.  A statement of all matters officially noticed.

   4.  All questions and offers of proof.

   5.  All objections and rulings on them.

   6.  All proposed findings and exceptions.

   7.  Any decision, opinion, or report made by the hearing officer.

   8.  Any staff memoranda or data submitted.

   9.  Any stenographic notes.

   10.  All reports or machine recordings of the hearing and transcriptions of them.

B.  The party who requested the hearing can ask to review and photocopy the hearing record and the hearing officer will provide the hearing record to the claimant at reasonable times. The hearing officer may charge the claimant a reasonable charge for copying documents, transcribing information and other services.

C.  CSE will maintain the hearing record for at least five years.

## 14.8    LEGAL REFERENCES

Code of Alabama 1975, as amended,  §26-17-20
Code of Alabama 1975, as amended,  §41-22-1 through §41-22-27
Rule 28, Alabama Rules of Civil Procedure
Rule 59, Alabama Rules of Civil Procedure
Chapter 660-1-5, Alabama Administrative Code
Chapter 660-3-15, Alabama Administrative Code


## 14.9    DOCUMENT REFERENCES

Application for Child Support Services (PSD-BCS-570)
Important Legal Notice
Notice of Results of Review of Child Support Order (DHR-CSD-1754)
Obligor Notice of Right to Administrative Review
Results of FIDM Review
Notice of Decision Regarding Administrative Review
Notice of Intent to Suspend/Revoke a License
Billing Statement
Pre-Offset Notice
Child Support Administrative Complaint Procedure
Request for Administrative Review
Notice of Decision Regarding Administrative Review
Obligor Notice of Lien
Financial Institution Data Match Notice


## 14.10    SCREEN REFERENCES

Record Event
    EVM, EVX
Worker Calendar Screen
    WCS

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| TRACY WOOTEN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 2:07-cv-701-WKM** |
| | ) | |
| PAGE WALLEY, et.al | ) | |
| | ) | |
| **Defendant.** | ) | |

## AFFIDAVIT

Before me, the undersigned authority, personally appeared **LOUISE SHADDIX**, who is known to me and who, having been first duly sworn, deposes and states as follows:

"My name is Louise Shaddix. I am a resident of Covington County, Alabama, am over the age of 19 years, and am competent to testify as to the matters contained in this affidavit. I am employed by the State of Alabama Department of Human Resources as a Progam Specialist with the Child Support Enforcement Division. I have been employed in the capacity of Policy Analyst for one year. I served as the administrative hearing officer from July, 2004 through the present. I have checked my hearing log and never received or handled an administrative hearing request on behalf of Tracy Wooten. I have been employed by the Department of Human Resources for a total of twenty-six (26) years."

Further affiant sayeth not.

_Louise Shaddix_
**LOUISE SHADDIX**

Sworn to and subscribed before me on this the 10th day of ___March___, 2008.

_Linda M McCoy_
Notary Public, State at Large
My Commission Expires: _11/2/2009_

**EXHIBIT
4**