IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TRACY WOOTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:07-CV-701-WKW [WO] |
| PAGE WALLEY, Commissioner, ) | |
| Alabama Department of Human Resources, ) | |
| in his individual and official capacities, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on a Second Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. # 16) and a Motion for Summary Judgment (Doc. # 17), both filed by Defendant Page Walley ("Dr. Walley").  For the reasons set forth below, the summary judgment motion (Doc. # 17) is due to be GRANTED and the motion to dismiss is due to be DENIED as moot.

**I. JURISDICTION AND VENUE**

The court may exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for all claims arising under federal law. The court also has original jurisdiction over claims based upon violations of civil rights.  *See* 28 U.S.C. § 1343. The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  FACTS AND PROCEDURAL HISTORY

On August 2, 2007, Plaintiff Tracy Wooten ("Ms. Wooten") filed this lawsuit against Dr. Walley in both his individual and official capacities as Commissioner of the Alabama Department of Human Resources ("ADHR"), alleging he violated her constitutional rights by intercepting her federal and tax refunds to satisfy her husband's unpaid child support.  (Doc. # 1.)  In her amended complaint, Ms. Wooten alleged two 42 U.S.C. § 1983 claims against Dr. Walley, for violating (1) the Takings Clause of the Fifth Amendment to the United States Constitution (Doc. #9 ¶¶ 19-23); and (2) the Due Process Clause of the Fourteenth Amendment (Doc. #9 ¶¶ 24-29).  She requested present and prospective injunctive relief from Dr. Walley in his official capacity, a declaratory judgment that her rights have been violated, modification or elimination of unconstitutional practices, compensatory and punitive damages from Dr. Walley in his individual capacity, and reasonable attorney's fees.  (Doc. # 9.)  Dr. Walley filed an answer (Doc. # 10) and later, a Second Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. # 16).  Before Ms. Wooten filed any response, Dr. Walley filed a Motion for Summary Judgment as well (Doc. # 17).  Ms. Wooten filed a response in opposition to the summary judgment motion (Doc. # 20), and Dr. Walley replied (Doc. # 21).

The claims arise out of the following alleged facts.  ADHR intercepted Ms. Wooten's 2005 and 2006 federal and state income tax refunds to satisfy her husband's

child support obligations from a prior marriage.¹ (Doc. # 9 ¶¶ 10-13; Doc. # 20-2 ¶ 1.) According to Ms. Wooten, she never received prior notice of the interception from Dr. Walley, the Alabama Department of Revenue, or the IRS. (Doc. # 9 ¶ 14.) She also claims that she tried to contact Dr. Walley's office to obtain her refunds or to request an administrative hearing, but that his office instructed her to contact the Alabama Department of Revenue and the IRS to object to the interception; yet those entities allegedly instructed her to contact Dr. Walley's office instead.² (Doc. # 9 ¶¶ 15-17.) In a later pleading, Ms. Wooten accused Dr. Walley of "willfully and intentionally fail[ing] and/or refus[ing] to implement policies and procedures to prevent" the violations. (Doc. # 20-2 ¶ 8.)

In his affidavit submitted with his motion to dismiss, Dr. Walley stated that he has no knowledge of or involvement in Ms. Wooten's intercepted refunds. (*See* Doc. # 16, Walley Aff.) The motion also invoked the Eleventh Amendment to the United States Constitution as a bar to suing Dr. Walley in his official capacity. (Doc. # 16 at 6.) In his Motion for Summary Judgment, Dr. Walley raised numerous additional arguments: that the tax offset used against persons behind in child support and the procedures to contest the offset are constitutional – and that Ms. Wooten failed to take advantage of them; that

---

¹ Interception describes the process whereby ADHR redirects tax refunds to satisfy child support payments. The process is described in note 8.

² It is also Ms. Wooten's contention that she has exhausted all avenues for obtaining a refund, including through Dr. Walley's office, the ADHR, the Alabama Department of Revenue, and the IRS. (Doc. # 9 ¶ 18.)

3

Title IV-D of the Social Security Act does not create a federally enforceable right; that the statute of limitations bars claims for the 2005 offset; and that the Fifth Amendment does not apply to state government. (Doc. # 17-2 at 2.)[3]

Ms. Wooten filed only one response to Dr. Walley's two motions. (*See* Doc. # 20.) She plead additional facts, as described above, but added no supporting evidence. In particular, she submitted no evidence of Dr. Walley's involvement in her case or of her right to a refund on her portion of the income on a jointly filed tax return.[4]

### III. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(c), as amended December 1, 2007 (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[5] The party moving for summary judgment "always bears the initial

---

[3] The court notes that Dr. Walley has not raised the defense of qualified immunity.

[4] As described in note 8, for a joint return filer to receive her portion of the refund for income she earned, she must file tax returns evidencing that she earned income for which the refund was due.

[5] Effective December 1, 2007, "[t]he language of Rule 56[was] amended . . . to make the rule[ ] more easily understood and to make style and terminology consistent throughout the rules. These changes . . . are stylistic only." Fed. R. Civ. P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent

responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting

---

stylistic changes, its substance remains the same and therefore, all cases citing the prior rule remain equally applicable to the current rule.

the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow areasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). If the evidence on which the nonmoving party relies, however, "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (Plaintiff's "conclusory assertions . . . in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory

allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact).

## IV.  DISCUSSION

The court first addresses the § 1983 claims for money damages against Dr. Walley in his individual capacity. Liability could be predicated on two theories: personal involvement and supervisory liability. *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th

Cir. 1992). Ms. Wooten has failed in meeting her burden to oppose summary judgment on both theories.

Ms. Wooten has not submitted any evidence that Dr. Walley had any personal involvement in intercepting her taxes. Dr. Walley submitted his own affidavit denying involvement in the interception or that he violated any rules. (Doc. # 16, Walley Aff. 1-2.) His affidavit was confirmed by the affidavit of Ms. Ke'Asha Howard, a Financial Support Worker in ADHR assigned to Mr. Wooten's case, who attested to her knowledge and exclusive handling of his case. (Doc. # 17, Howard Aff.) Those submissions satisfy Dr. Walley's initial burden of pointing to affidavits that demonstrate a lack of genuine dispute over Dr. Walley's involvement. Ms. Wooten's only response was in pleading that Dr. Walley intentionally failed to implement policies (Doc. # 20-2 ¶ 8). Ms. Wooten gave no evidence of which people she contacted at Dr. Walley's office "several times in an attempt to either obtain her income tax refunds or to be given an administrative hearing" (Doc. # 1 ¶ 14), despite the submission of Ms. Howard's affidavit stating that Ms. Howard only heard from Ms. Wooten through letters, which were submitted with the affidavit, one for each year refunds were taken. (Doc. # 17, Howard Aff. 1-2.) Ms. Wooten also gave no evidence of Dr. Walley's intentional refusal to implement policies. Because Ms. Wooten has failed to meet her burden of submitting evidence of Dr. Walley's involvement, her allegation of Dr. Walley's direct involvement does not survive summary judgment.

Ms. Wooten's claims could be construed, however, as implicating Dr. Walley's supervisory role at the ADHR. "'The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous,'" *Danley v. Allen*, -- F.3d --, 2008 WL 3874672, at *12 (11th Cir. Aug. 22, 2008) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). "'Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.'" *Id.* (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). Liability on the theory of respondeat superior or vicarious liability is not available. *Id.* Ms. Wooten has failed to meet her burden of showing that Dr. Walley personally participated in the constitutional violation, as discussed above, or to provide any evidence of knowledge or causation in his supervisory role. Nor has Ms. Wooten submitted evidence detailing "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation," *Brown*, 906 F.2d at 671 (describing the standard for causal connection). Summary judgment, therefore, is due to be entered in favor of Dr. Walley on Ms. Wooten's § 1983 claims against him in his individual capacity for money damages.

Ms. Wooten also requests prospective injunctive relief against Dr. Walley in his official capacity. Under the doctrine established in *Ex Parte Young*, 209 U.S. 123 (1908), "official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred

by the Eleventh Amendment." *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005). Nevertheless, an injunction requires a showing of "irreparable injury," and the standard for irreparable injury, even assuming *arguendo* that Ms. Wooten has proven a past violation, "cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury.").

To obtain injunctive relief, Ms. Wooten must provide evidence of a "sufficient likelihood" that she will be harmed again in a similar way to a past injury, and that showing must amount to more than a claim that could be filed by any citizen challenging the practices of state government employees as generally unconstitutional. *Lyons*, 461 U.S. at 111; *see also id.* at 105 ("That [the plaintiff] may have been illegally choked by the police [five months before], while presumably affording Lyons standing to claim damages . . . does nothing to establish a real and immediate threat."); *Church*, 30 F.3d at 1337 ("Logically, 'a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past,'" and is only "evidence bearing on whether there is a real and immediate threat" that must be supplemented by "'continuing, present adverse effect'" (citations omitted)). Dr. Walley presented evidence at the summary judgment stage that a court judgment had found Mr. Wooten no longer behind in child support

10

payments, and that subsequently, the entire 2006 refund had been reinstated.[6] (Doc. # 17, Howard Aff. 2-3; *see also* Doc. # 17, Howard Aff. Attachs. A & D.) No other tax refund interceptions have been alleged since that time. Such evidence, left unchallenged, undermines any claim that the alleged past property loss or due process violations to Ms. Wooten still pose a threat.[7] Ms. Wooten provided no counter-evidence that, for example, the alleged mistaken incident with the 2005 refund was a systematic problem that could be repeated, or that Ms. Wooten could possibly find herself in the position again of losing her refund because she would continue to earn income and Mr. Wooten would struggle to make his child support payments.

Indeed, Ms. Wooten failed to present evidence to prove any underlying past or continuing injury whatsoever. Dr. Walley's summary judgment submission, on the other hand, includes evidence supporting the claims that: (1) the letter from Ms. Wooten requesting her portion of the 2005 refund was too late[8] (Doc. # 17, Howard Aff. 2 &

---

[6] It is not clear whether the entire refund was reinstated because Ms. Wooten requested her portion of the refund or because it was otherwise refunded. (*See* Doc. #17, Howard Aff. 3.) A showing of the former would have strengthened an argument that an uncorrected mistake could occur again.

[7] As in *Lyons*, the exception to the mootness doctrine – that where a claim is "capable of repetition, yet evading review," *Lyons*, 461 U.S. at 109 – does not save Ms. Wooten's claim. Ms. Wooten has obtained review by filing a damages claim. *Compare id.* Additionally, this doctrine is only available "in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Id.*

[8] The communication was tardy because it came after the deadlines for responding to the interception. ADHR's case management computer system generates the pre-offset notice, which is sent by the State Child Support Enforcement Division to the non-custodial parent who owes child support, after which he or she has thirty days to contact the agency for a review; the notice also contains instructions for any future joint filer to obtain her allotted portion of any refund. (Doc. # 17, Janice Grubbs Aff. 2-3.) After the offset has occurred, the applicable taxing agency sends another notice. (Doc. # 17, Grubbs Aff. 3-4.) The non-custodial parent can again contest ADHR's interception. (Doc. # 17, Grubbs Aff. Attach. A 47, 52.) To obtain the *state* refund after the offset, the non-obligor taxpayer who jointly filed with the non-custodial parent must submit documentation and forms required for state tax

Attach. B); (2) the proper pre- and post-notices had been sent to Mr. Wooten and to the couple, respectively (Doc. # 17, Howard Aff. 2-3; *see supra* note 8 for discussion on notice requirements); and (3) Ms. Howard sent Ms. Wooten a letter redirecting her to the proper agencies for information on obtaining the refund post interception even though Ms. Wooten had filed a tardy request for her refund (Doc. # 17, Howard Aff. Attach. C)[9]. The evidence, at this stage, leaves no doubt that ADHR complied with the statute and that Ms. Wooten's refund was not illegally withheld. Ms. Wooten presented absolutely no *evidence* of failed notices or timely and thwarted attempts to challenge the refund interception or that the 2005 interception was illegal. She has put forth only conclusory allegations. On this record, there is no relief available to her.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1)    Defendant's Motion for Summary Judgment (Doc. # 17) is GRANTED; and

---

filings to ADHR within thirty days from the date of the post-offset notification. (Doc. # 17, Grubbs Aff. 4, 5-6.) For federal tax offsets, the non-obligor taxpayer must send forms to the IRS. (Doc. # 17, Grubbs Aff. 6 & Attach. A 48.) Ms. Wooten's letter to ADHR for the 2005 tax return was dated December 16, 2006 (Doc. # 17, Howard Aff. Attach. B), nearly a year after the pre-offset notification and six months after the post-offset notification (Doc. # 17, Howard Aff. 2).

[9] The letter directed Ms. Wooten to contact the IRS and the Alabama Department of Revenue for information on obtaining her refund post interception. (Doc. # 17, Howard Aff. Attach. C.) Considering that those agencies, and not ADHR, send the post-interception notification, they should handle inquiries regarding the process for obtaining refunds, though ADHR does process the state portion of any post-interception income due to a non-obligor taxpayer who properly notifies ADHR, s*ee supra* note 8, and the Alabama Department of Revenue in its notification letter directs all questions and concerns about the offset itself to ADHR (Doc. # 17, Howard Aff. Attach. C). The notification and challenge procedures are confusing, to say the least, and one cannot help but empathize with Ms. Wooten's position, but that does not change her late response or the fact that her claims are unsupported by evidence in this case.

(2)  Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. # 16) is DENIED as moot.

DONE this 12th day of September, 2008.

    /s/  W. Keith Watkins
UNITED STATES DISTRICT JUDGE